(33 South. 314.)

No. 14,400.

Succession of WILLIS.

(Jan. 5, 1903.)

ADMINISTRATOR — DISCHARGE — HOMOLOGATED ACCOUNT—PRESCRIPTION—PAYMENT OF CLAIMS—HEIRS—POSSESSION OF PROPERTY—APPEAL—REMAND FOR FURTHER INQUIRY.

1. An administrator will not be discharged when it is evident that his dismissal would be detrimental to the interest of the succession he represents; that it would only result in other costs and further delays.

2. Prescription will not run against a provisional account that has been homologated.

3. The administrator is the agent of all the parties concerned, who must pay claims acknowledged which he has been ordered to pay from the succession funds.

4. Heirs can only obtain possession of the property inherited by paying the debts or by furnishing security to the creditors.

5. Other questions remitted to judicial inquiry in suits pending and on account to be filed.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Franklin; D. N. Thompson, Judge.

In the matter of the succession of John W. Willis. Opposition by the widow and heirs to the provisional account of the administrator. From the decree the administrator of Willis and the administrator of Perry Nugent appeal. Reversed.

Andrew Augustus Gunby, William S. Benedict, Allan Sholars, and Ellis & Thompson, for appellants. John William Willis, for appellees.

BREAUX, J. Proceedings in opposition to the administrator's provisional account were instituted by Mrs. Catherine S. Willis, widow of John W. Willis, and by John W. and James M. Willis, sons of the late John W. Willis.

The succession was opened in January, 1882, in the parish of Franklin.

There were farms or places in three parishes,—Franklin, Caldwell, and West Carroll.

In the year 1896 the widow and heirs brought suit against the administrator, charging acts of gross maladministration, and asking for an account of administration. In the year 1901 the same parties filed another petition, setting out, among other things, that the administrator entered into fraudulent combinations with parties named with the view of defrauding the heirs of their rights; that the administrator and his late firm are seeking to wreck the succession, in order to benefit themselves; that the administrator is an absentee and insolvent. They further allege that the administrator, after the first petition above mentioned had been filed, averred judicially that he would file an account of his administration, but that he had not filed such an account.

The complaint of the opponents sets forth that the administration has been left to attorneys, and charges that they represented adverse interests; that the first attorney, who is not attorney of record in this case, was attorney for the firm of Allen, Nugent & Co., and that the attorney of record in this case is the attorney of the succession of Perry Nugent, transferee of the claim from the firm before named to the late Perry Nugent.

The administrator was ordered to file an account in 1896, which he failed to do. He swears that he received no notice of the order to account.

In August, 1901, the administrator filed a provisional account, to wit:

(1) Amount of supplemental inventory in Franklin parish, dated 11th January, 1889 ............... $ 4,560

(2) Amount of supplemental inventory in Franklin parish, dated 25th day of July, 1890 ................. 280

This inventory embraces judgment against Mrs. O. S. Willis for $1,760, appraised at nothing.

(3) Amount of supplemental inventory in Richland parish, dated August 17, 1898 ...................... 7,380

(4) Amount of supplemental inventory in Richland parish, dated 11th of August, 1890 ................. 160

$12,380

He credited himself with a number of items as stated on his account.

One of the items is No. 8, and reads: "The administrator credits himself with the amount of taxes, court costs, and attorneys' fees incurred in extending litigation and numerous suits in Franklin and Richland parishes, necessary to recover the property of the succession from Mrs. C. S. Willis, J. W. Willis, J. S. Murphy, and others, and to defend the numerous vexatious suits brought against the administrator and the succession of J. W. Willis, $3,500.00."

The administrator charges himself with the property and claims a number of credits.

We will not copy from the account at any length. It suffices to mention that the administrator charges himself with appraised value of property sold for less than amount of inventory, and credits himself with the price at which it was sold.

The opposition, it must be inferred from the previous statement, is directed against every item of the account, whether on the debit side or on the credit side.

Opponents ask that account be rendered for $25,000, asserted value of the succession. They also claim rent and revenues. They ask that the administrator be discharged from his trust as administrator, and for damages.

Opponents charge, in addition, that the entry of $3,040 for the Myrtle home place, and $2,000 for the McMurtry place and Bee Bayou tracts, are incorrect, no amount having been received, and no amount having been paid for these properties.

The judge of the district court, in a carefully prepared opinion, says that the only debts of any consequence when the succession was opened were a judgment in favor of Wansley for a balance of about $1,000, dated in 1870, and another in favor of Allen, Nugent & Co., also obtained prior to the death of the late John W. Willis.

J. B. Lallande, administrator, was a member of the firm of Allen, Nugent & Co., who held the Allen, Nugent & Co. judgment against the deceased. The attorney who opened the succession of Willis represented the firm of Allen, Nugent & Co., and remained attorney until he was succeeded by the attorney now attorney of record.

The administrator brought suit to recover property of the succession, and to have it brought back to the mass of the succession. The last of these suits was decided in 1889.

Supplemental inventories were then made, and the total valuation of all property amounted to about the sum of $18,288.75. The record shows that a provisional account was filed in 1886 and homologated in 1887. This account is lost. There is a copy of the judgment of homologation.

It appears, as charged, that the attorneys of the succession also represented creditors.

We agree with the learned judge of the district court that the sale attacked in the opposition cannot be annulled in these proceedings. This issue is presented, we are informed, in direct suit to annul, and will not be trenched upon by our decree. Title to part of the property, consisting of 4,400 acres of land, was sold for taxes, and twice redeemed. The right to this property, and the disposition made of the proceeds of its sale, present issues in the case. The district judge found that this was a matter at issue in the account of 1886, and that it cannot be inquired into. The same conclusion is arrived at by him as relates to judgment against the parish of Franklin,—that it also is no longer at issue, being barred by the account in question.

We may as well state now that we will not pass upon the question at this time whether it was disposed of by the homologation of the account of 1886, as we do not consider that it is necessary in finding our decree.

The judge of the district court charged the administrator with the sum of $357.80, less taxes mentioned. This amount was allowed for fees of counsel other than the regular attorney. From the amount certain taxes were deducted by the district court.

The judge a quo allowed items to 1 and 7, subject to decision in direct action, and 3 and 4 on credit side also. The credit items No. 2, $280, No. 5, $10, No. 6, $160, No. 9, $727, are allowed. Item No. 10, $2,600, claimed to have been paid on the judgment of "Allen, Nugent & Co., is allowed on same condition as items Nos. 1, 3, 4, and 7"; item 8, $3,500, for taxes, court costs, attorney's fees, aggregating $2,169.59. Of these items the administrator is entitled, as per account appealed from, to credits for the following:

SUCCESSION OF WILLIS.

Taxes paid in Richland............. $207 48
Taxes paid Landauer in 1888........ 56 00
Taxes paid C. J. Ellis, receipt........ 29 13
Taxes paid C. J. Ellis, receipt........ 101 54
Draft in favor of H. T. Earle......... 19 75
Draft in favor of H. J. Lea.......... 12 60
Draft in favor of H. J. Lea.......... 4 90
Draft in favor of A. W. Moore....... 61 94
Draft in favor of Jno. F. Loveless..... 31 50
Draft in favor of W. P. Power....... 22 00
Draft in favor of H. T. Earle......... 25 25
Draft in favor of Jno. D. Dummerlin.. 41 35

Total ....................... $613 44

The balance of the vouchers attached to said evidence, $1,556.15, the lower court says were embraced in the account of 1886, were filed in evidence, and are referred to in the note of evidence taken at the time; hence they cannot be allowed as a credit in the account here.

After having approved the items as before mentioned, the district judge passed to a consideration of amount to be allowed an attorney for professional services in behalf of the succession.

After stating, in substance, that there were numerous suits requiring the attention of the attorney, which do not appear to have benefited the succession to a larger amount than $5,000, the only amounts which went towards discharging the debts of the succession, says the lower court, out of the proceeds of the property sold, were $727 paid on the Wansley judgment, and $2,600 retained by the purchasers as credit on the judgment in favor of Nugent, and that, considering the realized amount, a fee of $2,000 was allowed.

The administrator's commission was reduced.

An amount of $250 was allowed as a reasonable fee for the attorneys in preparing and filing the account and trying the issues involved in the litigation.

The demand for rent of the Myrtle place was stayed until final decision in other proceedings.

Subject to the notifications and charges he had made, the district judge homologated the account. J. B. Lallande, administrator, was removed by the district court as administrator; and the opponents, widow and heirs of John W. Willis, deceased, were placed in possession of the property and effects of the estate. The rights of creditors to proceed against the heirs were reserved.

The administrator of the succession of Perry Nugent moved for a new trial on a number of grounds; among them: That the court had not passed upon the question of prescription urged by opponents against the judgment and claim of the succession of Perry Nugent.

That the court erred in putting opponents in possession of the succession without requiring payment of the debts or giving security, as provided by Civ. Code, art. 1012. That the opponents had never been recognized as heirs, and the widow had renounced the succession. This motion for a new trial was overruled. The administrator of the succession of Willis and the administrator of the succession of Perry Nugent appealed.

We take up for decision, in the first place, the demand for the destitution of the administrator from his trust. The administrator seeks preliminarily to meet this demand by urging that he cannot be dismissed on the opposition to the account; that a direct action must be brought. A direct action had been brought to have him dismissed. When it was urged for trial, the administrator urged lis pendens on the ground that the opponents were asking for his dismissal in their opposition to the account; that he could not be called to answer in two actions, at the same time for his dismissal, one direct and the other in the opposition to the account.

The court, on that ground, dismissed the direct action, and held that the subject would be considered on the opposition.

The administrator, having provoked the ruling, and accepted it as correct, cannot be heard to urge that the plea for his dismissal is not properly brought before the court. Gray v. Waddell, 33 La. Ann. 1021.

This brings us to a consideration of the demand to destitute the administrator. After having considered the facts and circumstances of the case, we have arrived at the conclusion that nothing is to be accomplished by dismissing the administrator at this late day in matter of the succession settlement.

If the administrator were dismissed, and another appointed, it would occasion other delays. The interested parties have had enough of the "law's delays." Costs and taxes have accumulated in the meantime. There must now be a settlement. No court

would sanction attempts at further useless delays.

As relates to the legal grounds urged for his dismissal, there is no proof before us that he is now insolvent. The securities on his bond are solvent.

We have seen that there was default in not filing an account of administration in 1896. As to the result, nothing shows a loss thereby. The heirs who are complaining are scarcely in a position to raise objection, for they were debtors, and until payment by them of sufficient of their indebtedness to pay the debts there was nothing in the administrator's hands with which to pay.

This court said in the case of Willis' Heirs v. Berry, 104 La. 114, 28 South. 888: "The opponents are entitled to but scant judicial sympathy in their attack on this administration."

Unquestionably, this administrator was at some fault for not complying with the court's order; not sufficient, however, to have him destituted about the end of the settlement of the succession.

If he were dismissed, the penalty would be felt more by the succession, which should now be settled without delay, than by the administrator. It will be borne in mind that by refusing to dismiss this administrator he is not released from any responsibility whatever arising from any cause.

In subsequent account he can be called upon to make a showing of everything received, and to render a full and fair statement. All claims urged against him heretofore (even for damages) may hereafter be considered, except those settled expressly by the litigation to date.

We leave this subject, after having considered all the grounds urged by the opponents for dismissal and all the decisions cited, convinced that destitution should not be decreed.

We take up the next question for decision in the order of importance of the issues presented.

The question, viz., are the judgments of Wansley and Allen, Nugent & Co. prescribed? presents the next issue to be decided. We think not.

We have noted that these judgments were recognized and carried on the account of 1886, which was homologated.

The contention is that the homologation of the administrator's account does not have the effect of suspending prescription. We think it has. The placing of a claim on an administrator's provisional account and the order granted for its payment, included in the judgment of homologation, have the effect of suspending prescription. The administrator is in court until his final discharge. He represents the creditors whose claims he has approved, and cannot be heard, while thus representing them, to plead prescription. This was the view taken in deciding Renshaw v. Stafford, 30 La. Ann. 856, citing Succession of Romero, 29 La. Ann. 495.

In another case it was said: "It is also the doctrine held by our courts, in cases of cessio bonorum." Wilcox v. His Creditors, 11 Rob. 348; West v. Same, 1 La. Ann. 365; Succession of Lyne, 12 La. Ann. 155; West v. His Creditors, 3 La. Ann. 531.

In Cloutier v. Lemee, 33 La. Ann. 307, the contention of those pleading prescription was that the acknowledgment of an obligation by an administrator did not suspend prescription. The court held that it did have the effect of suspending prescription. A similar view was expressed in Succession of Mansion, 34 La. Ann. 1247. Were we to take a different view, we would have to reverse a number of well-considered cases upon the subject.

We pass to the question whether the heirs have a right to possession, not having furnished bond. This question we must answer in the negative. The article of the Code, before cited, is plain enough. The heirs, before taking possession, must pay the debts, or furnish security required.

The decisions do not sustain the view that heirs can take possession of the property without regard to rights of creditors, upon a paper promise that they (the heirs) hold themselves responsible to them.

We come next to a consideration of the fee of attorney included in item No. 8. A more detailed account should be furnished, and proof introduced. We do not think we should pass upon the question at this time, as it will properly come up upon account hereafter to be filed.

As relates to other credits claimed by the administrator, from the transcript as prepared it is difficult to determine with any

degree of accuracy the amounts paid by the administrator for the succession of Willis.

Credits on the account of 1901 appear to have been referred to on the hearing to homologate the account of 1886.

The administrator in the case now before us says that the judgment on former provisional account did not allow credit for $1,556.75.

This may be correct, although the items were testified to as before stated, but for some reason the court did not allow them, especially in its judgment.

We imagine that they were carried on the lost account. Be this as it may, we will not, at this time, fix the amount due the administrator for any of the claims referred to, as included in No. 8, of the provisional account, now lost. We lay down the proposition that the administrator is entitled to credit for amounts paid by him for the succession, taxes and costs and other legal claims, provided they are not, for some reason, barred by adverse rights. They will come up for consideration in account to be filed hereafter. A connected statement of these claims should be filed, supported by vouchers and such testimony as may be needful to sustain them.

Complaint is directed by the administrator against the judgment appealed from on the ground that the judge erred in not marshaling the assets and liabilities of the succession, clearly striking a balance between the credits and debits allowed to the administrator.

It is safer to leave this complaint to be finally passed upon in a future account. We agree with the district judge in this regard.

The administrator complains of the supplemental inventory in Richland parish, and says that it leads to the unintelligible, as the property, as to description, is confusing and misleading. This unintelligibleness, and the asserted error in the inventory, if it give rise to anything susceptible of correction, or which should be corrected at all, and if still in time, as presented, may come up when an account hereafter will be filed.

It is therefore ordered, adjudged and decreed that the judgment appealed from is amended by annulling and setting aside that portion of the decree appealed from which places the widow and heirs in possession.

It is further ordered, adjudged, and decreed that the administrator remain in possession of the property until further order of court.

It is further ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed to the extent that it dismisses the administrator. The demand of opponents for his dismissal is rejected.

It is further ordered, adjudged, and decreed that the claims for the two judgments heretofore mentioned and referred to as the "Wansley judgment" and the "Allen, Nugent & Co. judgment" are not prescribed, and are legal indebtedness of the succession. The item No. 8 of the account is referred to settlement on next account, as well as other questions to which reference is made in body of the opinion to that end.

As amended, the judgment appealed from is affirmed; costs of appeal to be paid by the succession.