(41 South. 206.)

No. 15,867.

### Succession of GERARD.

(March 12, 1906. Rehearing Denied April 9, 1906.)

EXECUTORS—REMOVAL.

After the final account of a succession has been filed and homologated, and nothing remains to be settled except such matters as may be more properly settled among the heirs in a parti-

tion proceeding, and it is evidently to the interest of all parties concerned that the executor should not be removed, and there is presented no peremptory ground for removal, the executor will not be removed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

In the matter of the succession of Anna McLean Gerard, widow of Thomas H. Howard. From an order refusing to dismiss the executor, Leigh and George Howard appeal. Affirmed.

Leigh Howard, for appellants. Merrick & Lewis, for appellee Bankers' Surety Co. Patrick John Hennessey, for appellee Hawkins. James J. McLoughlin, for appellee executor.

PROVOSTY, J. The oral argument in this case took a wide range, but on examining the transcript the court finds that the only matter appealed from is the refusal of the lower court to remove the administrator. This court must, as a matter of course, restrict itself to the matter presented by the appeal, and is without authority to inquire into anything else. For an intelligent judgment in said matter it becomes necessary, however, to review the proceedings had in the lower court in the course of the settlement of the succession.

The de cujus died testate in February, 1901, leaving six children and naming two executors. An inventory was made, and the executors duly qualified.

In April, 1901, two of the heirs, namely, Gerard Howard and Leigh Howard, brought suit to annul the will. The petition alleged, inter alia, that the will required the two petitioners to collate $2,500, when as a matter of fact they had never received anything; whereas their coheirs, Earl, Charley, and Lula Howard, had received $1,800, $1,700, and $2,500, respectively. It was prayed that these heirs be made to collate. The remain-

ing heir, Fay Howard, intervened in the suit, maintaining the validity of the will, and asking that all her coheirs be required to collate.

In June, 1902, the several demands for collation were rejected as being premature.

In November, 1902, Leigh Howard filed a petition asking that one of the executors be removed on the ground that he had defaulted as a notary public and absconded.

Fay Howard, who was the wife of Richard Hawkins, having died, her said husband qualified as natural tutor of her six children, and in January, 1903, filed a petition substituting himself as a party plaintiff in the petition theretofore filed by his wife.

In May, 1903, Charley Howard filed a petition asking to be appointed dative testamentary executor, alleging that Earl Howard, one of the executors named by the will, had died, and that the other executor, Emile J. Barnett, had been destituted by judgment of court.

In June, 1903, the court rendered judgment destituting the executor Emile J. Barnett.

In August, 1903, Leigh Howard took a rule on Messrs. McCloskey & Benedict, attorneys, to show cause why they should not "bring into court the French spoliation claims belonging to the succession."

In September, 1903, Charley Howard was appointed dative testamentary executor, without opposition; and he duly qualified, by taking oath and giving bond according to law. A new inventory was ordered to be made, and was accordingly made.

In December, 1903, the attorney for absent heirs ruled the dative executor to show cause why he should not file an account.

In February, 1904, Leigh Howard filed a supplemental petition, praying that, in the event the court should decide that he is bound to collate $2,500 and that the collation is due for the farm he occupies in the parish

of Jefferson, he be put in full possession of said farm.

On March 11, 1904, the executor asked that the movable property of the succession be sold, and an order was accordingly so made.

Four days afterwards, on March 15th, Leigh Howard, for himself and as administrator of Earl Howard, and Gerard Howard, filed a petition asking an injunction against the sale of the movable property, on the ground: First. That there was no legal inventory, "one-half of the heirs were never notified, not knowing where they could be found." Second. That there are ten minors who are heirs to two-sixths of the estate. Third. That interdiction proceedings have been entered against Charley Howard, the executor; that he has never put on the inventory more than two-thirds of the movable property of the succession; and that he has removed half of the movable property that he had on the inventory and hauled it away in wagons within the last four weeks. Fourth. "That he has rented the house No. 4005 Camp street, on December 1, 1903, for $15 per month; that he has received rent enough to pay the taxes on that piece of property; that the case is on trial now to decide in the property in Jefferson parish whether it belongs to the estate or not. Fifth. That the other debts that James J. McLoughlin claims cannot be put against the estate until after the interdiction case is tried on its merits."

On this petition a rule nisi issued, addressed to Charley Howard and James J. McLoughlin.

On March 17, 1904, the rule was dismissed, and a commission was issued to J. L. Onorato, auctioneer, to make the sale. He made it on April 5, 1904, at the Real Estate Exchange. His procés verbal shows as follows:

"First. Two certificates of the New Orleans Debenture Co. adjudicated to Charley Howard for $50.

"Second. One lot of furniture, adjudicated to Charley Howard for $84.

"Third. One lot of jewelry, adjudicated to Charley Howard for $20.

"Fourth. One lot of books, adjudicated to Leigh Howard for $5."

The procés verbal recites that the adjudications were made because the adjudicatees were the highest bidders.

On the next day, April 6, 1904, Leigh Howard filed in court the following:

"Succession of Mrs. Anna Gerard Howard. "No. 64,517. Civil District Court, Division A.

"To the Hon. Judge Ellis: I Leigh Howard here come into your Honorable Court and pray that you set aside the sale of movable property of this succession that J. L. Onorato made on April 5th, 1904, at 12 m., under the grounds that they were not sold according to the agreement that all of the airs of this succession made on March 30th, 1904; that the said Onorato did not show any of the goods; that he did not give any description of them; that the sale was made for the administration to buy in everything; that the administration bought in everything except some books and I bought them and made a demand on Onorato for them and he said he didn't have them and that he could not deliver them; and that the administration of this succession had no right to bid on anything. Therefore I pray your Honor to set aside this sale because it was not according to law.
"[Signed]       Leigh Howard.
"Sworn to and subscribed before me this 6th, April, 1904.
"[Signed]       T. C. W. Ellis, Judge."

Upon this the judge made the following order:

"Order: Let proceedings be stayed as they are by the auctioneer until the further orders of the court, and let all interested parties show cause on Friday, April 8, 1904, at 11 a. m., why the relief prayed for should not be granted.
"[Signed]       T. C. W. Ellis, Judge.
"N. O., La., April 6, 1904."

On the 8th of April, 1904, the auctioneer answered that he had sold the property at public auction according to law after legal advertisement, all as shown by his procès verbal.

On the 12th of April, 1904, the executor filed a list of debts and asked that the real estate of the succession be sold to pay same; and an order was made accordingly.

On April 29, 1904, the rule to set aside the sale was tried; no appearance being made

for the defendant. Gerard Howard testified that at the sale he asked the auctioneer where the property was, and that the auctioneer told him he didn't know anything about it; that everything was sold to Charley Howard except a set of books. Leigh Howard testified as follows:

"The auctioneer read the advertisement, and said he would make the sale by the advertisement according to the inventory. I objected to the sale on the ground that he did not produce the stuff, and it wasn't in his possession, and he could not sell it. I do not know who had possession of the property, nor where it was. I know Charley Howard removed two bedroom sets seven or eight weeks ago from where it was, and he sold everything to Charley Howard except one lot of books. I bid in them books, to get four books of my father's writings, at $5. That same day I went to Mr. Onorato and asked the delivery of the books. I objected to the sale because there were a lot of buyers there, and when they saw how things was they went away, and second-hand dealers. Mr. Onorato told me he could not deliver these books; that he didn't have them and didn't know nothing about them."

On May 3, 1904, the court rendered the following judgment:

"Succession of Anna Gerard Howard.
"No. 64,517.　Civil District Court for the Parish of Orleans.
"Considering the agreement of the parties hereto, copy whereof will be filed, the law and the evidence being considered.
"It is ordered, adjudged, and decreed that said agreement be now ratified and made effective, and accordingly that all opposition to the will of the deceased by act before Felix J. Puig, notary public, of this city, be withdrawn.
"It is further ordered and decreed that the order of court heretofore issued, ordering that sufficient property of the succession be sold in order to pay debts, be ratified and made effective.
"It is further ordered and decreed under said consent and agreement that the direction of said will as to collation be decreed null and of no effect, and accordingly that the remaining assets of said succession be partitioned among all the heirs, share and share alike, and that all costs be paid by the mass.
"Judgment read and rendered in open court April 26, 1904.
"Judgment signed in open court May 3, 1904.
　"[Signed]　　　T. C. W. Ellis, Judge."

On the 31st of May the court rendered the following judgment:

"Succession of Anna Gerard Howard.
"No. 64,517.　Civil District Court, Division A.·
"For the reasons assigned in the written opinion of the court placed upon the rule for the production of property purchased.
"It is ordered that the administrator of this succession and the auctioneer, who made the sale of the movables bought by movers, be and they are hereby ordered to make delivery thereof to the purchasers within 20 days from the service hereof, and that in default thereof that the sale be annulled and set aside as to any property not delivered at that time, and that copy hereof be served upon the parties. Defendants to pay costs. Judgment read and rendered in open court May 25, 1904.
"Judgment signed in open court May 31, 1904.
　"[Signed]　　　T. C. W. Ellis, Judge."

From this last judgment Leigh Howard took an appeal to the Court of Appeal. The judgment of the Court of Appeal is not in the record, and it is not reported. From references to it here, and the testimony, we infer, however, that it affirmed the judgment of Judge Ellis.

On June 30, 1904, Charley Howard, executor, filed his final account. In the petition filed with the account and praying for its homologation he alleged that he had caused all the personal property of the succession and also one piece of real estate to be sold; that Onorato, the auctioneer, had not yet settled with him for the proceeds of the personal property, because of a lawsuit pending between him and the heirs; and that he cannot turn over the proceeds until the suit is adjusted. The account shows $1,478.14 for distribution, and $1,199.44 of privileged debts, and $144 of ordinary debts, and· $134.70 to be divided among the heirs.

On July 1, 1904, F. Rivers Richardson, attorney for absent heirs, filed an opposition opposing the account in each and every particular; that the debts placed thereon are not due, and, if due, are grossly excessive; that the assets of the estate are not accounted for and the receipts are not correctly stated. He alleged that as attorney for absent heirs he was entitled to be placed on the account for a fee of $25, and he prayed accordingly,

and that the other claims placed on the account be rejected or reduced to the proper figure, and that the executor be ordered to account for the remaining assets of the succession.

On July 12, 1904, the account was homologated in so far as not opposed.

On July 13, 1904, Leigh Howard filed the following opposition:

"Succession of Mrs. Anna McLean Howard. · "No. 64,517. Civil District Court, Division A.

"To the Honorable Civil District Court: I Leigh Howard, opposes the commission claim which he has as No. 2 and No. 6 Jefferson Parish, Taxes No. 9 Charley Howard, Commission No. 14, Stenographer Fees Nos. 15 and 16. McCloskey & Benedict 17 Not. Pub. 18 McLaughlin Fees No. 19 McLaughlin No. 20 Sale of personal property No. 21 Real estate sale, and the ordinary. I fact I think that the Honorable Court aurt to order all creditors to prope claims.

"[Signed]                 Leigh Howard."

On the 18th of July Leigh Howard filed the following:

"Succession of Mrs. Anna McLean Howard. "No. 64,517. Civil District Court, Division A.

"Roul for Charley Howard the Administrator of this succession to show cause why he should not put the foweling property in this succession if he has it in his percession and if not on Monday Aug. 15th, 1904 at 11 o'clock a. m. what became of it:

| | |
|---|---|
| 1 Masonic Quilt | 1 lot wash tubs. |
| 1 lot gold Masonic Emblems | 3 bars. |
| | 1 trunk. |
| 2 Arm chairs | 1 Parrot and cage. |
| 1 locket and chain | 1 Marking bird. |
| 2 Chandiers | 1 Lot French Spoliation claim. |
| 2 Brass Syp Glasses | |
| 1 Wedding dress | 1 Roller Top desk. |
| 2 Armoirs of Linen | 1 Lot oil cloth in dining room. |
| 1 Gents Gold Watch | |
| 1 Lady's Gold Watch | 1 Silver soup ladle. |
| 1 Silver basket | 1 Electric Batery. |
| 1 Book case | $2000.00 Government bonds. |
| 1 Sewing basket | |
| 3 linen window shades | |

"And the following that was on the inventory:

| | |
|---|---|
| 6 Family pictures | 1 Sewing machine |
| 1 Plated Bell | 1 Plated bread basket |
| 1 Plated cake basket | 1 Family Bible. |

"[Signed]                 Leigh Howard."

On the 19th of September, 1904, Charley Howard filed an answer to the above rule. In this answer he says that he knows nothing about "1 Lot of gold Masonic Emblems, 1 locket and chain, 2 Armoirs of Linen, 1 Gent's gold watch, 1 Mocking bird and cage, 1 Lot French Spoliation Claims, 1 Silver soup Ladle, $2000 Government bonds."

The answer proceeds as follows:

"Honorable T. C. W. Ellis: In answer to notice July 18th, 1904, I will say as follows: "Arm chairs one of these may have been my desk chair. This I have proved my ownership to Mr. Lewis who was then representing Frank Kawe. The Roller Top Desk and the chandelers were also at the same time to be my property, and since that time I have disposed of them. The second arm chair I nothing of about. unless it was in the parlor set. 1 Locket and chain, This I know nothing about. 2 Brass Spy Glasses, this may mean one pair of field glasses and a pair of Opera Glasses that I bought in St. Louis of last year from the Simons Hardware Co., of Broadway, St. Louis. If these are not the ones I know not what is meant in the pertission. "1 Wedding dress, this one not down in the inventory, it is very much moth eaten has no commercial value, it being a heirloom in the family, I being the youngest in the family took possession of it, it has since been sent to New York City. "1 Ladies gold watch, this means my mother's watch which was bought at auction with other things. 1 Silver basket. This was bought at auction. 1 book case, this was bought at auction. 3 Linen Window shades, these were bought at auction. 1 Lot wash tubs. I had some slats laundry tubs in the yard that I bought from Frank B. Hayne. These are what is meant. 3 Bars these were bought at auction with the furniture. 1 Trunk. This probably means an old black trunk that the silver ware was kept in, this could not be sold for 25 cts. "1 Parrot and cage. This is my personal property and my mother never laid claim to it. 1 Lot oil cloth. This was not worth taking up, Mrs. Fisher and Mrs. Smith both put matting over it and when Mrs. Smith moved it was then on the floor. 1 Silver Soup ladle. This I know nothing about 1 Electric Battery. By this is meant a burglar's alarm Annuncia which was my property. $2000.00 Gov. bonds. 6 Family pictures. One of these I gave to Richard Harkins as he had a right to it and the other five had no commercial value so I took possession of them. 1 Sewing Machine. There were two machines in the house, one was the property of my sister and one was the property of my mother, mother's machine was sold with the rest of the furniture. 1 Plate Bell was in the Silver-ware. 1 Plate cake Basket was in the siver-ware. 1 Silver Bread Basket. This was in the silver-ware and was sold at auction. This was taken for the 11 article of pertition. 1 Family Bible. This was valued at $2.50 with other books, the other books were bid in by Frank Rowe at the auction. I was told by

my attorney that the bible had no Commercial value so I sent it to New York. I will pay the assessed value of Bible and Books which would be $2.50.

"[Signed]                          Charles Howard.

"Sworn to and subscribed before me at New Orleans this 16th day of September, 1904.

"[Signed]                          Bus Rouen, Not. Pub."

Evidence was heard on the trial of this rule. Five witnesses were examined. All the testimony is mere hearsay, except that of Mrs. Susan Parker, who traces into the possession of Charley Howard a number of things as to which he says above that he knows nothing. But it is evident that she had had a falling out with Charley Howard, because of his refusal to let her take some old sheets, and that her testimony is not above suspicion. Charley Howard did not testify, but the note of evidence recites:

"We produce Charley Howard for examination, if desired."

No judgment was rendered on this rule. It seems to have been lost sight of.

On November 9, 1904, Leigh Howard filed a petition praying the removal of the executor and alleging as follows:

"Your pertitions petitions this Honorable Court that Charley Howard the Administrator of the Succession be removed and another Administrator be appointed; that Charley Howard has robed this estate of moverables that was on the inventory and that was not on the inventry, that he neglected the Real Estate. that he alowed Three Pieces of property in Pass Christion Miss to be sold for Taxes. tha he alowed the Piece in Jefferson Parish this State to be advertised for taxes. That he has left this state and thair is noe one to look out for this property and that the Bondsman, the Bankers Security Co be held untill a new Admindstration is Apointed."

On November 9, 1904, he prayed that a curator be appointed to represent the absent executor, and accordingly James J. McLoughlin, Esq., was appointed.

On January 10, 1905, Leigh Howard filed the following petition:

"Succession of Mrs. Anna McLean Gerard Howard.

"No. 64,517.   Civil District Court, Division A.

"Your petitioner, Leigh Howard, a resident of Jefferson parish, this state, who represents one half of this succession.

"Now comes into this Honorable Court and Pertitions to have the sale of the movable property of this succession set aside and annulled. Becaused it was not sold acording to Agrement Between all of the Hairsk that everything would be produced and sold, James J. McLoughlin acting for Charley Howard, will full power to act as he said. that the books that I bought whitch were 25 on the inventory, Jos. L. Onorato offored me 29 Books. That in the Lot of Books that Belongs to this succession were 1 Famley Bible with $100.00 4 Scrap Books of my Family writings with $500.00 1. Famley Albin worth $50.00 the others 19 Books I dont know the titles But they were at lest 12 inches long, if this sale is not annulled your petitioner claims Jos L. Onorato and James J. McLoughlin and Charley Howard is jointly indebted to me for the value of these books, which is $650.00 and what ever the other 19 may be worth.

"Your pertitoner prays that Jos. L. Onorato, James J. McLoughlin and Chaorley Howard may be cited to show cause why this sale should not be annulled and your petitioner granted his full rites or they pay me $650.00 what that jestly owe me for the value of the Books that I bought whitch with costs and interest as I am entitled to.

"[Signed]                          Leigh Howard."

To this petition J. J. McLoughlin, curator ad hoc, pleaded res judicata, based on the judgment in the former suit to annul the same sale.

On January 10, 1905, Leigh Howard took a rule on J. J. McLoughlin, Esq., "to show what right he had to take the money of the succession and keep it on deposit in bank in his own name, and if he has the right to keep this money why he should not give bond." Mr. McLoughlin answered that the executor had paid the debts not opposed on the account to the amount of $438.84, and that, "being about to leave New Orleans, he had turned over to him (Mr. McLoughlin) the balance of the funds, $1,039.30, and that he (Mr. McLoughlin) now deposited said amount in court, in accordance with an order theretofore rendered by the court at his request that he do so."

On June 12, 1905, the court rendered judgment sustaining the opposition of F. Rivers Richardson to the extent of requiring that he be put down on the tableau of the succession for $10, and dismissing the opposition of Leigh Howard as having been filed too late, and

ordering the funds to be distributed according to the account.

On the same day the court rejected the demand for the dismissal of the executor, "with reservation of the rights of all the heirs against each other, to be asserted upon the partition of the estate."

From this last judgment, Leigh Howard has appealed. He has not appealed from the other.

The reasons given by Judge Ellis for his judgment are the following:

"The plaintiff alleges that the defendant executor (his brother) has robbed the succession of certain movables, inventoried and not inventoried; that he allowed three pieces of property at Pass Christian, Miss., to be sold for taxes; that he allowed the property in Jefferson parish to be advertised for taxes, and incurred costs and penalties; that he left the state, and there is no one to look out for the property.

"On these allegations, general and wholly wanting in specification, he prays that the executor be dismissed and that a new administrator be appointed.

"The proof shows that certain real estate in Mississippi was sold for taxes, but that the time for redeeming the same has not yet expired. This property, though owned by the deceased, lies outside of the state of Louisiana, and was never under the administration of the defendant executor. Any one of the heirs could redeem it. Any one of them could do so to-day, and the defendant was under no more obligation to redeem the property than the petitioner. The amount wasted by this litigation would have more than redeemed the property in Mississippi.

"The property in Jefferson was advertised to be sold for taxes, and the executor paid the taxes, penalties, and costs. The proof shows that he had no funds of the succession with which to pay said taxes prior to the time that he paid them. The petitioner in this suit has been living on this property in Jefferson, pays no rent for it, derives whatever revenues or fruits it produces, and enjoys its use. As an heir, he had. and has exercised, this right of occupancy subject to the rights of his coheirs, to be settled on the partition; but, as an heir, the executor was under no personal obligation to pay the taxes, more than was the petitioner, and, under the facts shown, not as much personalty as an heir, and when he received funds of the succession then he paid the taxes. It is true that costs and penalties had been incurred, but then it does not seem to have been his fault.

"The charge is made that the executor robbed the succession of movable property. The movable property inventoried was sold by the auctioneer, and the procès verbal shows the sale, to wit, that everything in this sale was bought in by the executor, he being an heir, except a small lot of books, which was bid in by the plaintiff. It seems that there was some trouble about the delivery of the movables to plaintiff, as purchaser of said books, and he took a rule to set aside the sale for nondelivery, and this rule was made absolute as to everything which was not delivered. It seems, since that matter was tried and decided, that the auctioneer all the while had possession of the books, and that the plaintiff could have received the books if he had demanded the same.

"The auctioneer during this trial has sent the books to this court, subject to the order of the plaintiff as their purchaser, should he see fit to take them, or, if not, then to be turned over to the heirs, as an asset of the succession, for partition. The movables sold to the executor, as an heir, can be settled for by him on the partition, and on this score there is no seeming complaint.

"Evidence was given on this trial, and also on the trial of a rule on the executor to account for certain property, in regard to a family Bible of the deceased; also a wedding dress, and a certain spy glass or field glass; and the plaintiff claims that the executor has wrongfully made way with these things. The executor admitted that he sent the family Bible and the wedding dress to New York. He says that he thought he had a right, as an heir, to do this; that the Bible was of little value, and the wedding dress old and of no real value, except its sentimental value as an heirloom. The dress was not inventoried, nor was the Bible separately inventoried, and I do not find that the spy glass or field glass was entered on the inventory. There is much hearsay testimony in the record about these articles, and the proof, especially in regard to value, is by no means satisfactory. The hearsay part of it was objected to, and, of course, is not evidence. The return of the executor to the rule taken, and above referred to, is sworn to by him.

"While the proof is not satisfactory as to these movables, and while the executor has no right to send away the dress and Bible, no matter how small he may have deemed their value, nor what he thought was his right as an heir, still there can be no justification for his conduct in sending them away from the state, without the consent of his coheirs, or of the court, if they were sent away by him after he received his letters as executor. The time when he sent them away does not seem to be fixed by evidence, even approximately, and inasmuch as he can be charged on the partition, in favor of his coheirs, with whatever may be the value of these articles, and as it is not certain whether he sent them away after he became executor, I do not find in this conduct, reprehensible though it be, legal justification for his dismissal.

"As to the spy glass or field glass, the testimony of the executor, in the rule above alluded to, was that he knew of no such article owned by the succession, and that the spy glass which he had was his own property.

"There was evidence, vague enough, in regard to certain articles of furniture, a bird and a

·bird cage and some other things; but the evidence is too vague and inconclusive to fasten liability upon anybody in regard to the same.

"The last charge is that the executor left the state and there is no one to care for the affairs for this succession. The proof is that he left this state to be gone for some time. but that he will return the coming fall. He left the succession funds in the hands of his counsel, Mr. J. J. McLoughlin, the same being in bank, and these funds have been paid by Mr. McLoughlin into the registry of the court. The real estate in this city and movables have been sold, and the executor has filed his account and it had ·been homologated, except as to two oppositions, one for $8 and one for $25, prior to the institution of this suit and while the executor was here. There was nothing else for the executor to do in the way of administration, all debts and charges then due by the estate having been settled, and but for this litigation I have no doubt that full settlement would have been made soon after the homologation of said account. The executor was harassed by rules, motions, and litigation at the suit of this petitioner, about little matters of small value, that produced costs and trouble, rather than profit to anybody, and, besides this, the personal terms between the executor (his brother) were acrimonious and bitter, and most disagreeable to everybody compelled to have aught to do with said petty litigation.

"If the purpose of the executor in leaving this city for a time was to avoid trouble with 'his brother, he is to be commended. It seems· that he could not get employment here. and that he could find work where he went. Whatever his motive for going, his absence has caused no injury to the succession, which is here intact and ready for partition among the heirs, and the evidence shows that his absence was not intended to be permanent, but only until the approaching fall.

"There is no need for further administration. There are no debts to be paid, and nothing remains to be settled. On the partition all the claims between the heirs, of every nature, can ·be settled. To appoint a dative executor would require more advertising, another inventory, a new bond, and when the new executor would receive his letters he would have absolutely nothing to do. The property in Jefferson, the proceeds of any property sold now deposited in ·court. and whatever may remain of the estate, including claims which the heirs may have against each other for any account. can all be settled on the partition, without the necessity of a new executor. The property in Mississippi can be redeemed by any of the heirs, or by them jointly, and restored to the ownership of the heirs, and with this the heirs can also deal as they see fit.

"I think the authority of the case of Succession of Willis, 33 South. 314, 109 La. 282, is ·directly applicable to this case, and under that authority, and under the evidence, a judgment will be entered dismissing the demands of the petitioner, at his costs, with reservation of the rights of all the heirs to assert whatever claims they may have against each other on the partition.

"N. O., La., June 26, 1905.
    "[Signed]         T. C. W. Ellis, Judge."

The case has had our careful consideration, as evidently it had that of the learned judge a quo. For the reasons given by him, this judgment is affirmed.

We will add, however, that, if the absence of the executor from the state has been protracted more than one year, this is peremptory cause for removal (Civ. Code, art. 1158), and that the services of some succession representative will be needed for paying out the money deposited in court.

It is ordered, adjudged, and decreed that the judgment appealed from be affirmed, at the cost of the appellant.