No. 12,492.

IN THE MATTER OF THE PELICAN SAW MILL AND MANUFACTURING COMPANY.

Reiterated that it is the amount of the fund to be distributed, and not that of the claim of the complaining creditor, that determines the jurisdiction of this court. Motion to dismiss appeal denied.

Where creditors, recognized on a receiver's account, are opposed, it is incumbent on such creditors to adduce the proof necessary to substantiate their claims, and failing in this they will be stricken from the account.

After the judgment amending and homologating the account has become final and the funds have been disbursed by the receiver pursuant to its mandate, this court, under the facts here presented, will not reverse and remand in order to permit opportunity to complaining creditors to appear and prove their claims.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

*Rice & Montgomery* and *F. L. Richardson* for Receiver, Appellee.

*Hughes & Favrot, Buck, Walshe & Buck, Benjamin Rice Forman* and *Hugh C. Cage* for Opponents and Appellants.

Argued and submitted January 28, 1898.
Opinion handed down March 21, 1898.

### ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

BLANCHARD, J. The motion to dismiss is made on the ground that the amount claimed by each appellant is below the appealable jurisdiction of this court.

The provisional account of the receiver proposing to distribute fifteen thousand five hundred and thirty-three dollars and seventy-six cents, and his final account proposing to distribute four thousand one hundred and eighty-nine dollars and seventy-five cents additional, or a total of nineteen thousand seven hundred and twenty-three dollars and fifty-one cents, were tried together, amended and homologated under one judgment.

Representing themselves as creditors of the insolvent concern and averring error in the judgment and injury to themselves, A. M. Edwards, John Stranger and Henry Buddig prosecute this appeal.

It is not the amount of their claim that determines the appellate jurisdiction; it is that of the fund to be distributed. Constitution, Art. 81; Murray vs. Sweeney, 48 La. An. 761; Amendment, Acts 1882, p. 174.

The motion to dismiss is denied.

### ON THE MERITS.

Appellants were creditors of the insolvent corporation. They appeared as such on the books of the concern. They were listed as creditors on the provisional and final accounts filed by the receiver. When these accounts were presented to the court the usual order was made for their advertisement according to law, and it is shown that they were advertised for ten days in the English and French languages. Oppositions were filed, and these and the accounts opposed came on for trial in due course.

The oppositions were leveled at each and every claim listed on the accounts as debts due by the corporation. and the three

complaining creditors herein were mentioned by name and their claims opposed as not being debts due.

Opponents prayed that the items opposed be rejected and disallowed and stricken from the accounts.

There were numerous creditors. Many of them appeared at the trial of the oppositions and substantiated their claims. But forty eight of the creditors, who had been placed on the receiver's accounts as such, failed to appear, notwithstanding the oppositions brought into question and contestation their claims. Among these were the three appellants herein. No proof whatever was offered on their behalf to make good their debts in this contest between the creditors.

As a consequence, in the final judgment on the accounts their claims were disallowed. In a proceeding where everything was disputed and combatted and a trial had contradictorily with opposing creditors, nothing could be allowed which did not have a basis of proof to stand upon.

Claims not supported by testimony could have no rating with claims proven, where opposition had put all to the proof.

On this point the learned judge of the court below said: "Those items of ordinary debt that I have ordered stricken from the accounts were all opposed, and the parties have brought no proof to sustain them. If they suffer loss, it is the result of their own fault in not producing their proof."

The judgment of homologation of the accounts, as amended, was rendered January 22, 1897, and signed Febuary 3, 1897. A month later Stranger and Edwards, appellants herein, appeared in the lower court, *for the first time*, and took a rule on the receiver to show cause why their claims should not be paid as ordinary creditors. This rule, on trial, was dismissed for the obvious reason that they no longer had, before the court, the character of creditors of the insolvent corporation. Called in question in the way the law provides, there had been no proof at the trial of their claims, once recognized on the accounts, and the same had been stricken therefrom. The judgment of the court doing this had become final, it was the mandate for the receiver to pay out and disburse among those who had proven their claims and been recognized as creditors the moneys in his hands, no suspensive appeal had stopped his doing so, and he had made the payments. At least nothing to the contrary appears.

Their rule to enforce payment having failed, Stranger and Edwards took an appeal, both from the judgment amending and homologating the accounts and from the adverse judgment on the rule.

Buddig, the other appellant herein, appeared about this juncture *for the first time*, and took an appeal.

These appeals were all necessarily devolutive—it was too late to appeal suspensively.

There is no testimony in the record which justifies this court in amending the accounts appealed from so as to include appellants thereon as ordinary creditors. It is not contended by appellants that there is.

But they do insist on the reversal of the judgment, to the end that the case may be remanded for another trial below. This would give appellants the opportunity *now coveted* to prove their claims and take rank on the list of ordinary creditors. If this should be done and these parties proved their claims and became recognized as ordinary creditors, the result would be, since there is not enough to pay all, that those creditors now recognized on the adjudged account as such, would receive less.

But, meanwhile, under the judgment and mandate of the court, not suspensively appealed from, the receiver has disbursed the funds in his hands. Those recognized as ordinary creditors on the approved account have received their *pro rata* share.

Should the case be remanded on this demand of appellants and the account be then amended by including them and the forty-five others who failed to appear and prove their claims in the first instance, where would the money come from to pay them their percentage?

The receiver has it not, for he has paid it out on the first judgment recognizing the other creditors and striking these from the list.

Must the receiver himself be required to make up the amount to them out of his own funds, or to be mulcted for the same on his official bond?

Or will the parties, later recognized as ordinary creditors, have to pursue those earlier recognized as such, to force them to disgorge a part of what they had been paid on their claims? A fruitful field of litigation would be here presented.

The appellants were, beyond doubt, creditors, and the receiver did his duty, both to his trust and to them, in placing them on his

account as such.    Other creditors had the right to oppose this and did so.

The provisional account, which first recognized appellants as creditors, was filed November 15, 1895.

The second and final account, which also recognized them, was filed May 5, 1896.

Between the two dates the case had come to this court on an appeal anterior to this one, prosecuted by other creditors on other grounds.

On February 20, 1896, Bankston and others filed oppositions challenging every item on the provisional account, and, by name, the claims of these appellants.

They renewed this opposition on May 14, 1896, to the final account.

Other creditors, about that time, presented similar oppositions.

The taking of evidence on the trial of the accounts and the oppositions filed thereto, began on October 23, 1896, continued through the remainder of that month, was resumed again on November 6, 1896, the case was argued and submitted on December 5, 1896, and judgment was signed February 3, 1897.

It thus appears the settlement of the affairs of this insolvent corporation was pending in court for largely more than twelve months before the judgment now appealed from became final, and more than eleven months had elapsed from the filing of the first opposition, challenging appellants' claims, before the judgment was signed, which struck their claims off the account.    Yet in all that time they made no appearance to defend their rights thus attacked.    And now they put up the contention that they had no knowlege or information that any one disputed they were creditors, and complain they have been condemned without notice or hearing.    Whose fault was this?

If the receiver had ignored their claims and filed his account without recognizing them as creditors they would have had to appear and file oppositions in order to obtain a place on the account.

This was the only way, and if they had neglected it and the account been seasonably homologated, on due proof, they would have been barred.

Under such circumstances, suppose they had later appeared, taken an appeal, brought the case here and urged that the judgment be reversed and the case remanded in order that they might file an opposition and have themselves included on the account as creditors, would they be listened to?    Surely not.

Is there any substantial difference in the case as now actually presented?

The receiver put them on his account; co-creditors opposed; they neglected throughout an entire year to appear and make good their right to a place thereon. The case went to trial without them, other claims, proven, were allowed; theirs, without proof, disallowed. Now they appeal, after disbursement of the fund, and ask remanding of the case in order that they may adduce proof and obtain a place on the account. It is too late. By their own laches they are left out. The receiver did his duty when he placed on his account all whom he considered creditors, and other creditors having opposed, the issue, as correctly stated by the trial judge, was shifted and the contest became one among creditors. It was the concern of the creditors whose claims were opposed to adduce the evidence to sustain them. Calder vs. Creditors, 47 An. 1539. It was not the duty of the receiver so to do, nor to take part in such a contest between creditors.

The law favors the vigilant, while it turns a deaf ear to those who find their right impaired as the result of their own indifference, inattention, or want of care.

Unlike the Calder case, *supra*, gross neglect on part of the complaining creditors is apparent here, and, all things considered, we do not see our way to remanding the case.

Judgment affirmed.