189 So. 126

**E. C. PALMER & CO., Limited, v. LOUISIANA PRINTING CO., Inc.**

No. 35208.

April 3, 1939.

Rehearing Denied May 1, 1939.

Henican, Carriere & Cleveland and C. Ellis Henican, all of New Orleans, for appellee.

L. A. Morphy and F. A. Kullman, both of New Orleans, for appellant.

LAND, Justice.

Plaintiff and defendant are Louisiana Corporations and both are domiciled and doing business in the City of New Orleans.

On March 6, 1936, plaintiff filed executory proceedings against defendant, basing its action on fifteen past due and unpaid promissory notes, secured by two authentic acts of chattel mortgage, both executed and dated, respectively July 15, 1932, and September 12, 1932. These chattel mortgages cover certain machinery and equipment which were owned, at the time, by the defendant, and contain confession of judgment and the pact de non alienando, and grant the right to executory process. The chattel mortgages were recorded, as soon as they were executed, in the Mortgage Office for the Parish of Orleans.

On the day the suit was filed, March 6, 1932, the following order was signed:

"Let executory process issue as prayed for herein, according to law." Transcript 6.

On the same day, a writ of seizure and sale was issued by the Clerk of Court commanding the Civil Sheriff for the Parish of Orleans to seize and sell for cash, to the highest bidder, without appraisement, after due advertisement, etc., according to law, the mortgaged property, in order to pay and satisfy the claim of plaintiff by preference and priority over all other persons in the sum of $3400 with interest thereon at the rate of 8% per annum from the 15th day of July 1931, until paid, together with 15% of the principal and interest as attorney's fees, and all costs of suit. Transcript 22, 23.

On March 6, 1936, the Civil Sheriff served defendant, through H. L. Hebert, Liquidator, with the usual notice of seizure, thereby taking the property into his official custody in anticipation of the final sale. Transcript 35.

At that time, the Louisiana Printing Company, Inc., was carrying on voluntary judicial liquidation proceedings before the Civil District Court for the Parish of Orleans; H. L. Hebert, being the judicial liquidator; and L. A. Morphy, being the attorney for the judicial liquidator.

However, plaintiff did not issue final instructions to the Civil Sheriff to proceed with the judicial sale until *the early part of November 1938,* due to the intercessions of the liquidator and his attorney for permission to continue the operation of the business; and due to indulgence after indulgence granted to the liquidator by plaintiff, and enuring to the benefit of the liquidator.

These final instructions to the Civil Sheriff were given, only after the liquidator had notified plaintiff in executory proceedings that further operations could not be conducted, and that a final liquidation was inevitable.

The attorney for the liquidator, Mr. Morphy, became a co-liquidator *on October 13, 1938.* Thereafter, on November 9, 1938, the Civil Sheriff served notice of seizure upon him, and also served another notice of seizure upon Mr. Hebert, co-liquidator. Transcript 37-40.

*On November 23,* 1938, Hebert and Morphy, co-liquidators, filed a petition in the executory proceedings, alleging substantially that the proceedings were invalid because the chattel mortgages on which they were brought were not reinscribed within five years of their original inscription. Transcript 43.

As, at that time, the property was being advertised for sale, the co-liquidators applied for the issuance of a temporary restraining order, which was refused by the trial judge, who ordered plaintiff, defendant in rule, to show cause on November 29, 1938, why a preliminary injunction should not issue. Transcript 47.

Plaintiff, defendant in rule, filed a plea of estoppel, and also pleaded the interruption of the prescription relied upon by defendant, plaintiff in rule, effected by the

filing of the executory proceedings on March 6, 1936, which was long prior to the accrual of the five years prescription pleaded by plaintiff in rule.

Plaintiff, defendant in rule, further contended that when the order for executory process was signed on March 6, 1936, its chattel mortgages were in full force and effect; that the order for executory process adjudicated to plaintiff all of its rights under the chattel mortgages; and that plaintiff, defendant in rule, was entitled to proceed with its executory process under the order of March 6, 1936, and the writ of seizure and sale issued thereunder; reinscription being, in view of the adjudication, unnecessary.

On the trial of the rule, Mr. Morphy, one of the co-liquidators, attempted to prevent plaintiff, defendant in rule, from going into any facts alleged in the plea of estoppel, and tried to explain on the witness stand, wherein all of the things he did, and by which plaintiff, defendant in rule, alleged that it was led into a trap, were "gentlemen's agreements", and not binding at all.

The long explanations of the co-liquidator are found in the transcript and are recorded from page 76 through page 116.

After hearing the testimony of the co-liquidator, the trial judge concluded that the plea of estoppel was well founded, and the rule nisi was ordered dismissed.

The reasons assigned by the trial judge for dismissing the rule were dictated in open court on the morning of November 30, 1938, and are as follows:

"The Court. Executory proceedings were filed in this cause on March 6, 1936, against the Louisiana Printing Company, Inc., then in liquidation in this court under number 205-913. Under the proceedings pending in this division, the property was seized by the civil sheriff under a writ issuing out of this court. ' The proceedings were subsequently stayed through negotiations between the seizing creditor and the liquidators, who are officers of this court, in the hope of working out the affairs of the corporation. The liquidation proceedings further show that on December 11, 1934, *the report of the liquidators recognizes the debt due the seizing creditor as a preferred creditor.* This, in the opinion of this court, was an acknowledgment of the debt and a promise on the part of the liquidator to see that in the final liquidation the debt was paid in preference to all other creditors. *For this court now to permit one of its officers* to come into these proceedings and claim that the failure to re-inscribe the mortgage bars the seizing creditor from executing thereon and being recognized as a prior claimant on the proceeds of the sale thereof, would in its opinion be lending itself to perpetrating a gross injustice upon the seizing creditor. Under such circumstances the liquidation proceedings being equitable in their nature, *and the liquidators being officers and officials of this court,* this court will not lend itself to being a party to such proceedings and will refuse the rule nisi. (Dictated in open court, at the conclusion of the argument, November 30, 1938)" (Italics by the court.)

(1) The case is before us on appeal by defendant from the judgment discharging the rule nisi and denying the preliminary injunction sought by defendant, plaintiff in rule, at its costs.

At the outset, it must be observed that the lower court in this case was dealing, not with the conduct of third persons, but with the conduct of its own liquidators, the officers of the court.

Besides, the record contains other evidence also amply sufficient to maintain the plea of estoppel tendered by plaintiff, defendant in rule.

Mr. Morphy, the witness, became officially connected with the liquidation of the Louisiana Printing Company, in 1934. He was a witness to the two chattel mortgages on which these executory proceedings are based. Transcript 85.

When asked if he was very anxious to obtain the cooperation of plaintiff, defendant in rule, to enable the liquidation to continue operations, he replied:

"I answer that, yes, and say that the record speaks voluminously to the same effect, the record in the liquidation proceedings." Transcript 85.

The testimony of Mr. Morphy shows clearly that there were a series of agreements, from time to time, for the purpose of giving the debtor, Louisiana Printing Company, Inc., an opportunity to help itself. Transcript 96, 100.

The first indulgence granted by plaintiff, defendant in rule, was an extension, under an agreement between L. A. Morphy, as attorney for Hebert, liquidator, and C. Ellis Henican, as attorney for plaintiff, defendant in rule, to about April 1st, 1934. Transcript 95.

In connection with the application for this extension, and in order to gain the favor of the defendant in rule, waivers were obtained from key employees of plaintiff in rule, Louisiana Printing Company, Inc., subordinating whatever prior claims they might have for wages to the chattel mortgages held by defendant in rule, E. C. Palmer Company, Inc. Transcript 92.

A second indulgence was granted in April 1934 by plaintiff, defendant in rule, by giving an extension, under another agreement, to July 1934. Transcript 98.

In July 1934, it was suggested to Mr. Morphy that the machinery and equipment, on which plaintiff, defendant in rule, held its chattel mortgages, might be transferred, by a dation en paiement in settlement of the debt. Transcript 99.

But, in lieu of carrying out the suggestion, Mr. Morphy begged plaintiff, defendant in rule, "to string along with the liquidation." It was represented, at the time, that in October, 1934, the liquidation would be in a position to pay some amount to reduce the balance due on the chattel mortgage notes. Transcript 101.

In October, 1934, the liquidator made a payment to plaintiff, defendant in rule, and requested further indulgence. Transcript 99, 100.

On October 16, 1934, plaintiff, defendant in rule, agreed that if defendant, plaintiff in rule, would liquidate its ob-

ligation without requiring the foreclosure, the former would reduce the rate of interest to six per cent and the attorney's fees to $500. Transcript 105; see Exhibit E at Transcript 66; and Exhibit F at Transcript 60.

Mr. Morphy admits that throughout, and even up to the latter stages of the liquidation proceedings, the preferred position of plaintiff, defendant in rule, was being used as a club by the liquidators in order to control the other creditors of plaintiff in rule. Transcript 111.

At the request of at least one of the plaintiffs in rule, Mr. Hebert, defendant in rule held meetings with the creditors of plaintiff in rule, in an effort to obtain further indulgences for it. In June, 1935, Mr. Hebert, liquidator, presented figures to show that the business had a chance to make money in June, July and August 1935; whereupon he urged the creditors, particularly, plaintiff, defendant in rule, to allow the liquidation to continue to operate.

Mr. Morphy, attorney for the liquidator, helped the liquidator to place the figures in more attractive form to present his plea for further leniency. Transcript 112 and 113.

The statement of anticipated profit produced by Hebert, liquidator, at the meeting, appears in the record as Exhibit G at page 70 of the transcript.

In the face of these agreements for indulgences, all of which were executed, and in the face of the benefits received by the liquidators from such agreements, Mr. Morphy can not be permitted to be heard to say now that these were merely "gentlemen's agreements," hence no agreements at all. Transcript 101. Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656; Myron Turfitt v. Police Jury of Tangipahoa Parish, 191 La. 635, 186 So. 52.

Nor can he be permitted to repudiate these agreements, with the hope of depriving plaintiff, defendant in rule, of its security, when defendant in rule changed its highly preferred position as mortgage creditor, as the result of its relying upon these agreements.

When the order of executory process was signed on March 6, 1936, plaintiff, defendant in rule, was entitled to proceed with its executory process under such order and under the writ of seizure and sale. No prescription had accrued. This court will not permit the devious Fabian policy pursued by the liquidators in this case to defeat the lien and right of plaintiff, as the holder of these chattel mortgages, to be paid by the liquidators by preference and priority over all other creditors.

The liquidators having secured and consented to these indulgences cannot afterwards exercise their legal right in opposition to such consent, since their conduct has induced the plaintiff, the other party, to change its position so that it will be pecuniarily prejudiced.

This is the case, even where a person tacitly encourages an act to be done. Swain v. Seamens, 9 Wall, U.S., 254, 19 L.Ed. 554.

Judgment affirmed.

O'NIELL, C. J., and ROGERS, J., concur in the result.

HIGGINS, J., absent.