INTERNATIONAL SHOE CO. v. PICARD & GEISMAR, Limited.

No. 20012.

District Court, E. D. Louisiana, New Orleans Division.

Dec. 15, 1939.

Abe Frey, of St. Louis, Mo., and Leslie Moses, of Houston, Tex., for petitioner International Shoe Co.

Walter Lemann of Donaldsonville, La., and Guion & Schulze, of New Orleans, La., for intervenor Harold S. Mayer.

Weiss & Weiss, of New Orleans, La., Borron, Owen & Borron of Baton Rouge, La., and Frymire & Ramos, Lazarus, Weil & Lazarus, Jonas C. Sporl, John H. Hammel, Jr., Matthew A. Grace, and Harry R. Cabral, all of New Orleans, La., for various intervening creditors.

G. F. Purvis, Jr., Sp. Asst. Atty. Gen., for State of Louisiana.

Schwarz, Guste, Barnett & Redmann, of New Orleans, La., for Victor J. Gros, receiver of respondent.

PORTERIE, District Judge.

On January 29, 1930, upon a creditor's bill and answer filed by the respondent, a receiver was appointed for Picard & Geismar, Ltd., a Louisiana corporation, domiciled in the parish of Ascension, within this district. The decree contained injunctive provisions forbidding any creditor from causing to issue out of any court any process against the assets and the property of the corporation. By order dated February 3, 1930, the receiver was directed to employ a certified public accountant to audit the books and affairs of the company. In the course of the audit, the accountant sent to all those appearing as creditors on the records of Picard & Geismar, the customary request for statements of accounts. Prior to March 17, 1930, all creditors had furnished to the receiver or to the accountant statements of their respective claims in the amounts shown in the auditor's report. The result was a net difference between the indebtedness of the corporation, as shown by its books, and the amount claimed by the creditors, of less than $60.

On March 22, 1930, the report of the accountant, listing in detail every creditor appearing on the books of the corporation, was filed by the receiver. According to the audit report, the creditors numbered three hundred and seventy-three and their claims aggregated $303,331.42.

The full operation of the business of the corporation, sugar plantations and general commissaries in connection, having resulted in loss, was, with the approval of the court, discontinued in 1932. One of the plantations (Waterloo, for cane crop) was leased, however, during 1933 for $903.27; also, rents for land for the years 1934 to 1938, both inclusive, amounted to $5,144.63. See statement of receiver for period April

1, 1932 through September 30, 1938. It followed, therefore, that the principal source from which the creditors might expect to realize payment was approximately sixty-four hundred acres of land. This land was not disposed of until 1938, when it was sold at public sale by the receiver for $108,000 cash. The receiver, having funds out of which a distribution might be made to creditors, and being advised that issues would be raised either by opposition to any account which he would file, or by other appropriate procedure, obtained from the court (1) an order requiring all creditors to file within a stated time with the receiver sworn proof of claim and providing that "any such claims not filed within the time fixed by this Order shall be debarred from sharing in the benefits of any monies now or hereafter in the hands of the Receiver"; and (2) an order fixing a date of hearing on the issues and providing for the giving of proper notice of such hearing to all of the creditors and other interested parties.

Whitney National Bank of New Orleans held promissory notes of Picard & Geismar, Ltd., on which the unpaid principal amount is, in round figures, $73,000. Canal Bank & Trust Company, in liquidation, held notes of Picard & Geismar, Ltd., on which the unpaid balance is approximately $37,000. One Harold S. Mayer, who was not a creditor of Picard & Geismar, Ltd., purchased the claim of Whitney National Bank of New Orleans on April 18, 1938, and the claim of Canal Bank & Trust Company, in liquidation, on May 19, 1938, thus becoming, for the first time, a creditor of the insolvent corporation. Canal Bank & Trust Company, in liquidation, had filed an intervention in the receivership proceedings, asserting its claim, on December 3, 1934; and Whitney National Bank of New Orleans, after having obtained formal permission from this court, filed suit in the state court on December 6, 1934.

Harold S. Mayer, at the hearing fixed, filed pleas of prescription under the Louisiana statutes, Civil Code of Louisiana, Arts. 3538 and 3540, against the claims of all creditors who had not filed suit, either by way of independent action or intervening bills, within three years on open accounts, and within five years of maturity on claims based on promissory notes; and also, of three years against all unpaid taxes accruing prior to January 1, 1936. If these pleas of prescription be maintained, then of the three hundred and seventy-three creditors,

only International Shoe Company, the original complainant, Commercial & Savings Bank, in liquidation, and Harold S. Mayer, assignee of Whitney National Bank of New Orleans and of Canal Bank & Trust Company, in liquidation, would share in the proposed distribution to creditors.

There was offered and filed in evidence an agreed statement of facts, in which the receiver denied the right of one of the claims assigned to Harold S. Mayer to participate in the proposed distribution, and asserted a claim against the adjudicatees of the corporation's property for revenues therefrom, collected between the date of the adjudication and the date of the delivery of the receiver's deed.

The uncontradicted testimony of the receiver, given at the hearing, was to the effect that, at all times, he recognized as creditors all those appearing on the audit report; that from time to time he sent circular letters to all creditors, advising of the status of the receivership; and that, in many instances, he discussed the situation with creditors and local attorneys for creditors; and at no time did he ever have any other thought in the matter than that all of the parties so listed were recognized creditors in the amounts shown on the audit report.

The contention of Harold S. Mayer is (1) that the law of Louisiana, as evidenced by the decision of its Supreme Court in Taylor v. Vossburg Mineral Springs Co., 128 La. 364, 54 So. 907, is that receivership proceedings do not interrupt the running of prescription; and (2) that this court is bound to apply the state law in equity receivership proceedings, citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Insurance Company, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

The receiver denies the claim of Mayer, as assignee of Canal Bank, on notes of Picard & Geismar, Ltd., amounting to $37,000, on the ground that through the action of that bank and its predecessor in title, Marine Bank & Trust Company, the value of collateral pledged as security for said notes in an amount in excess thereof was wholly destroyed. These mortgage notes so pledged were five of an issue of twelve, in the principal sum of $5,000 each, secured by first mortgage on Clover Ridge Plantation and improvements. The act of mortgage required the mortgagor

to keep the improvements on the mortgaged property insured against fire in the sum of $100,000, to have the policies payable to the holders of the notes, as interest may appear, and to deliver the policies to such holders. Canal Bank & Trust Company became the pledgee of all twelve of the mortgage notes; seven of them having been pledged to the Marine Bank (with which the Canal merged) by Clover Ridge Planting & Mfg. Co., Inc., and five having been pledged to it, as above stated, by Picard & Geismar, Ltd. Accordingly, policies were obtained and renewed, containing proper loss payable clauses, and were delivered to the Canal Bank as holder of the mortgage notes.

Clover Ridge company was placed in receivership in the state court on March 6, 1926, and A. I. Picard was appointed receiver. Its sugar factory was destroyed by fire on May 22, 1930. On that date the seven first mortgage notes of the Clover Ridge Company amounted, in principal and interest, to $38,818.90, and the five first mortgage notes held by the Canal Bank as collateral to the notes of Picard & Geismar, Ltd., amounted, in principal and interest, to $45,069.32.

The fire loss was settled for $68,643.84 and, by agreement, this amount was deposited with the Canal Bank in escrow to await judicial determination of the rights of the parties claiming therein. Neither Picard & Geismar, Ltd., nor its receiver was a party to the settlement or to the escrow agreement. Upon learning of the settlement and of the escrow agreement, the receiver of Picard & Geismar, Ltd., filed an auxiliary bill in this court against the Clover Ridge receiver, the Canal Bank & Trust Company and others, claiming that the insurance proceeds, pro tanto, should be applied to the payment of the mortgage notes owned by Picard & Geismar, Ltd., and pledged to the Canal Bank. On motion and after hearing, this bill was dismissed for lack of jurisdiction.

Thereafter, the Clover Ridge receiver filed an account in the state court in which he treated the insurance proceeds as being in his possession, which proceeds he proposed to apply to the payment of administration costs and outstanding receiver's certificates, leaving a balance of $13,000 to be paid to Canal Bank, as holder of the mortgage notes. Various oppositions to this account were filed, including one by the receiver of Picard & Geismar, Ltd., claiming that the insurance proceeds should be applied in their entirety to the payment of the first mortgage notes. At the trial of these oppositions the receiver of Picard & Geismar, Ltd., learned for the first time that the pledgee of the notes, first the Marine Bank and then its successor, the Canal Bank, in writing, on December 30, 1927, and on December 27, 1928, had subordinated the said notes to receiver's certificates issued by the Clover Ridge receiver.

The controversies raised by the various oppositions to the Clover Ridge receiver's account were finally determined by the Supreme Court of Louisiana. In re Clover Ridge Planting & Mfg. Co., 178 La. 302, 151 So. 212.

A. I. Picard was receiver of the Clover Ridge Company and also an officer and director of Picard & Geismar, Ltd., during the time the mortgage notes were subordinated to the receiver's certificates.

Robert E. Lee Mayer was the adjudicatee of the remaining real property of Picard & Geismar, Ltd., approximately six thousand acres. Between the date of the adjudication, June 13, 1938, and the date of the receiver's deed and payment of the balance of the purchase price, November 2, 1938, the adjudicatee collected revenues from the property in the net amount of $443.32. The delay in the execution of the deed was at the request of the adjudicatee so as to afford his counsel sufficient opportunity to thoroughly check the property descriptions that should be placed in the deed.

There are property taxes claimed by the state and its subdivisions for the years 1932 to 1937, both years inclusive, and corporation franchise taxes for the years 1933 to 1939, both inclusive. Harold S. Mayer contends, under the provisions of the Louisiana Constitution, that the lien of all taxes accruing in any year prior to 1936 is prescribed; that, as to real estate taxes which do not constitute a personal liability, the effect is that they are wholly uncollectible; and as to corporate franchise taxes, the lien thereof having prescribed, they constitute only an ordinary claim.

I. (A) Is Plea of prescription of three and five years valid in bar of claims represented by open accounts and promissory notes, respectively?

(B) Is plea of prescription of three years valid in bar of the claim of the

state and any of its political subdivisions for taxes. ad valorem, franchise, or otherwise?

(A) The court is of the view that the Louisiana law of prescription is applicable. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290. The latter case is particularly decisive because of the following:

" * * * The subject is now to be governed, even in the absence of state statute, by the decisions of the appropriate state court. *The doctrine applies though the question of construction arises not in an action at law, but in a suit in equity.* * * * " 304 U.S. at page 205, 58 S.Ct. at page 861, 82 L.Ed. 1290. (Italics supplied)

Claimant interposing the above pleas of prescription in bar of his co-creditors relies upon the leading Louisiana case of Taylor v. Vossburg Mineral Springs Co., 128 La. 364, 54 So. 907, 908. The court agrees, as is held by the opinion in this case, that there is no law in Louisiana to the effect that the appointment of a receiver or the existence of a receivership operates to interrupt the running of prescription on claims against the corporation to which the receiver was appointed. This court further agrees that " * * * the case presenting the closest analogy to that of an insolvent corporation in the hands of a receiver is that of an insolvent succession, with respect to which it is well settled that: 'Prescription runs against all persons, unless they are included in some exception established by law, and there is no exception in favor of creditors of a succession, whether solvent or insolvent.' " (Syllabus 7)

However, we must heed the following quotation taken from the case:

"The fact is that the law of this state, which authorizes the appointment of receivers, contains no provision upon the subject of suits against them at all, and, if we look elsewhere for information, we find that, nowhere, are suits against receivers prohibited, though, as a rule, permission to sue must be obtained from the court by which the receiver was appointed; *and it appears to us that, in a receivership, the object of which is to wind up the estate of the corporation, it is as desirable that the creditors should be compelled to present their claims, promptly, as in the case of a succession, solvent or insolvent; and we can see no good reason why such claims should not be prescribed if they fail to do so.*' (Italics supplied) 128 La. at page 384, 54 So. at page 914.

We have examined the case of E. C. Palmer & Co., Ltd., v. Louisiana Printing Co., Inc., 192 La. 757, 189 So. 126, and found therein a statement representing the view of this court. We are borrowing from the decision of the lower court which the Supreme Court of Louisiana approves indirectly, if not fully, by making it, in extenso, a part of its statement of facts. The statement is:

"The liquidation proceedings further show that on December 11, 1934, the report of the liquidators recognizes the debt due the seizing creditor as a preferred creditor. This, in the opinion of this court, was an acknowledgment of the debt and a promise on the part of the liquidator to see that in the final liquidation the debt was paid in preference to all other creditors. For this court now to permit one of its officers to come into these proceedings and claim that the failure to re-inscribe the mortgage bars the seizing creditor from executing thereon * * * would in its opinion be lending itself to perpetrating a gross injustice upon the seizing creditor. Under such circumstances the liquidation proceedings being equitable in their nature, and the liquidators being officers and officials of this court, this court will not lend itself to being a party to such proceedings and will refuse the rule nisi." 192 La. 757, 189 So. at pages 127, 128.

At page 9 of the agreed stipulation are found the several facts leading to the following story: that by January 31, 1930, all of the creditors, 373 in number, and representing the aggregate sum of $303,331.42, had filed their claims, had had them checked as correct, and acknowledgment had been made either by the receiver or the auditor. The full and complete audit was placed of judicial record on March 22, 1930, with the Clerk of Court. This set of facts, under the Louisiana statutes and jurisprudence above cited, gave extended life to the claims, to last as long as this receivership. Therefore, the plea of prescription fails.

The other cases cited by the proponent of the prescriptive bar, to-wit: Item Co., Ltd., v. Nu-Grape Bottling Co., Inc., 160 La. 975, 107 So. 770; Bailey v. Louisiana & N. W. R. Co., 159 La. 576, 105 So. 626;

In re Pelican Sawmill & Mfg. Co., 50 La. Ann. 404, 23 So. 363, are, in the same degree as Taylor v. Vossburg Mineral Springs Co., supra, inapplicable, because these cases hold that the mere appointment of a receiver does not suspend the running of prescription as to the claims of the creditors; but they are all of the same tenor as the Taylor case to the effect that the mere filing of a claim by the creditor with the receiver, or the acknowledgment of the debt by a bankrupt on his sworn schedule of liabilities, serves as a suspension of the running of prescription on the debt.

For further illustration of the above reasoning, we quote below several annotations found under Article 3520 of Dart's edition of the Civil Code of Louisiana. The article reads as follows:

"Prescription ceases likewise to run whenever the debtor, *or possessor,* makes acknowledgment of the right of the person whose title they prescribed." (Italics by the court)

Quoting the annotations:

"Acknowledgment by Third Person.

"Executor's acknowledgment of succession debt suspends *its prescription while* succession property remains in executor's possession. Johnson v. Waters, 111 U.S. 640, 4 S.Ct. 619, 28 L.Ed. 547.

"A tutor, curator or other administrator may acknowledge a debt so as to interrupt prescription. Executors of Morgan v. Métayer, 14 La.Ann. 612.

"The written acknowledgment, or judicial admission of a judgment debt of a succession, made by the executor, will interrupt prescription. Succession of Patrick, 30 La.Ann. 1071."

The Louisiana books are replete with cases verifying the doctrine, from the early case of Renshaw v. Stafford, 1878, 30 La. Ann. 853, to that of Succession of Willis, 1903, 109 La. 281, 33 So. 314.

In Renshaw v. Stafford, supra, it was stated (30 La.Ann. at pages 856 and 858):

"We think it manifest that the law never contemplated that a creditor whose debt has been formally acknowledged should bring a suit to establish his claim. The policy of the law discourages such proceeding; would punish it by inflicting the costs thereof on the creditor. True, the law gives him after a reasonable time, * * * a right to compel the administrator to account. * * *

"We therefore conclude that after a creditor of an estate has had his claim duly acknowledged by the administrator the law does not contemplate any further proceeding on his part to establish it, as against the estate. That in principle the administrator is his trustee, and holds in possession, for his benefit, the property of the estate, which is the common pledge of the creditors."

█ The filing of claims with the receiver suspended prescription in that it placed each creditor on a legal parity with the original creditor by suit, the International Shoe Company.

There are of record Exhibits 1 to 17, both inclusive, being letters by the receiver, in some instances sent to all creditors; and in other instances, being answers to special inquiries from some of the creditors. These letters are all subsequent to March 22, 1930, date of the judicial filing of the audit, from which date the court has already ruled that the running of prescription was suspended.

█ Under the laws of Louisiana, by which we must consider the receiver as the court-appointed agent of the corporation-debtor, the court is of the further view that the basic and underlying purport of each and all of these letters was the continued and repeated acknowledgment of the debt by the debtor to the creditor. Each acknowledgment was a repeated interruption of the running of prescription.

█ Again, if the running of prescription be not suspended and, again, not interrupted, to which premise the court in no wise subscribes, the effect on the debts, if any, caused by the filing of claims, followed by oral and written acknowledgment from the receiver, may be now considered. The accumulation of these circumstances is equivalent, under Louisiana law, to the conversion of the open accounts to accounts stated. Prescription as to an account stated is 10 years, as it is classed a personal action. Civil Code of Louisiana, Art. 3544. So, under this treatment, again, the accounts are not prescribed at this time. See Harman & Stringfellow v. Legrande, 1922, 151 La. 253, 91 So. 726; Byrne v. Prather, 1859, 14 La.Ann. 653; Davis v. Houren, 1845, 10 Rob. 402.

Forgetting for the moment that we have held unqualifiedly that the Louisiana law of prescription applies, and in order to bring full argumentative exposition to the

issue, should we not inquire about the past Federal rules of equity and jurisprudence as to creditors' bills that have been applied for decades?

The finding of facts discloses that much correspondence was had between the receiver and the creditors during the first two years of the receivership (1930–1932), definitely and accurately fixing all claims; there followed a comparative lull in the correspondence (1933–1937), because of the want of difference between the receiver and the creditors; then, during the latter part of the receivership (1938–1939), there was much activity, because creditors became anxious for payment and the receiver had money to distribute. It is proper for the court to decide whether this early activity in the receivership, represented by the correspondence of the first two years and the filing and presentation of claims by the creditors at that time, is a suspension of prescription under federal precedent.

■ Under the provisions of the federal law, Section 65 of the Judicial Code, 28 U. S.C.A. § 124, 36 Stat. 1104, we believe the receiver had such a legal status that he could, for and in the name of the debtor, suspend and interrupt prescription. See American Brake Shoe & Foundry Co. v. New York Railways Co., 2 Cir., 85 F.2d 531; St. Louis Union Trust Co. v. St. Louis & S. F. Railway Co., Tex.Civ.App., 146 S.W. 348; Massachusetts Bonding & Insurance Co. v. Steele, 125 Neb. 7, 248 N. W. 648; Godchaux v. Texas Pacific Railroad Co. et al., 151 La. 955, 92 So. 398.

The note of evidence discloses that Picard & Geismar, Ltd., was really and at all times in an insolvent condition, even though it was in court in a receivership instead of in a bankruptcy. The year prior to the receivership, the company had operated at a loss of around $60,000; the receivership in its first year operated at a loss of about $32,000.00 (see Transcript, page 5).

At the end of nine years of receivership it is testified that ordinary unsecured creditors, if they be not barred by prescription, "should get somewhere around twenty-five cents on the dollar" (Transcript, page 15).

To require the filing of suits by the creditors on open accounts and by the creditors holding ordinary promissory notes would be an excessive burden in court costs, in a situation to the creditors sufficiently deplorable already because they are, to begin with, at a loss of 75% of their claims. It is common for the greater number of ordinary creditors on open accounts to have relatively small claims, many of them under $100. It would be quite impractical, especially where creditors are to receive but partial payment, to compel the expenditure of court costs as high as the amount of the claims.

■ The multiplicity of unnecessary and comparatively costly suits in a situation such as this should be prevented. This is the very purpose of the creditor's bill in equity. 21 C.J., Equity, p. 72, § 48 (a); Tift v. Southern R. Co., C.C., 123 F. 789.

The court must recognize that the federal practice has been uniform in holding that the facts in this case would preserve the life of all the debts presented to the receiver, filed with him and acknowledged by him.

Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864:

" * * * The creditor, having established his claim, became entitled to the benefit of the proceeding as virtually a party complainant from the beginning, and the time that had elapsed from the filing of the bill to the proof of his claim would not be counted as a part of the time relied on to bar the creditor's right * * *. In other words, if he proves himself to be a creditor with a valid claim * * *, he becomes a complainant by relation to the time of the filing of the bill." 121 U.S. 27, 7 S.Ct. at page 799, 30 L.Ed. 864.

McCormick, Tax Collector, v. Puritan Coal Mining Co. et al., 3 Cir., 28 F.2d 331, at page 333:

" * * * and, if the statute of limitation between creditors claiming their proportion of the insolvent trust estate on the ground that the period of limitation had expired since the trust was created were applied, it would conflict with long and well-established doctrines to the contrary. The general rule of equity, which has been sustained in that class of cases where an insolvent debtor's property has come into the custody of the court to be distributed under equitable principles for the cestuis que trustent, is that the rights of all parties are fixed as of the time when the property was taken into the custody of the court. Heckert's Appeal, 24 Pa. 482; McClintock's Appeal, 29 Pa. 360; Kirkpatrick v. McElroy, 41 N.J.Eq. 539, 7 A. 647."

(B) Now, as to the Taxes.

■ The plea of prescription leveled at the tax claims falls by the same reasoning as above given, when the open accounts and the promissory notes were considered. We need not repeat.

■ Furthermore, all of these unpaid taxes accrued during the receiver's possession and are, therefore, costs of administration, payable by preference and priority over the creditors of the corporation. People of State of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L. Ed. 1136; MacGregor v. Johnson-Cowdin-Emmerich, Inc., 2 Cir., 39 F.2d 574; Hennepin County v. M. W. Savage Factories, 8 Cir., 83 F.2d 453.

■ Should the theory fall that franchise taxes form part of the costs, there must be considered further the question, because of the corporation being in receivership, whether these taxes are due or not due under the provisions of the Corporation Franchise Tax Act of Louisiana, Act No. 8 of 1932, as amended, and Act No. 10 of the First Extra Session of 1935, as amended. The tax is imposed "for the privilege of carrying on, doing business, or the continuance of its charter within this State * * *."

Under this particular language of the Louisiana statute, the franchise taxes herein are due, with all liens and privileges, for the years 1933 to 1938, both inclusive. People of the State of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L. Ed. 1136; Thompson v. State of Louisiana et al., 8 Cir., 98 F.2d 108; Act of June 18, 1934, 48 Stat. 993; 28 U.S.C.A. § 124a.

■ Now, as to the question of the penalties and attorneys' fees assessed by law upon the delinquent franchise taxes due the state, we find these to be due. See Boteler, Trustee of the Estate of Richmaid Creameries, Inc., v. Ingels, Director of Motor Vehicles of the State of California, et al., 60 S.Ct. 29, 84 L.Ed. ——, October Term, 1939, rendered November 6, 1939, wherein trustee in bankruptcy was held; a fortiori, the receiver herein is held. For previous jurisprudence supporting liability, before the Act of Congress of June 18, 1934, see McFarland v. Hurley et al., 5 Cir., 286 F. 365.

The case cited contra by the attorney for the receiver, McCormick, Tax Collector, v. Puritan Coal Mining Co., 3 Cir., 41 F.2d 213, is not the rule we have decided to apply. We subscribe rather to State of California v. Hisey, 9 Cir., 84 F.2d 802. Besides, the Act of June 18, 1934, c. 585, 48 Stat. 993, 28 U.S.C.A. 124a, sets aside the jurisprudence of the McCormick case because the latter is of date May 16, 1930.

■ Again, the company was quite active at the beginning of the receivership, and continued its charter beyond the date of the Act of Congress of June 18, 1934, cited supra, after which time state franchise taxes became due and owing, irrespective of the absolute want of business activity. The phrase "continuance of its charter," taken from the Louisiana Franchise Tax Act, patently permits the application of the provisions of the Federal act during the years of the receivership subsequent to June 18, 1934.

Accordingly, previous citations of Richmond v. Irons, supra, and McCormick, Tax Collector, v. Puritan Coal Mining Co., supra, because of the Act of Congress of 1934, become inapplicable, insofar as state taxes and the penalties and attorneys' fees accruing thereunder be concerned.

■ The issue is made on the 1939 franchise taxes as not being due, because the assets of the corporation were sold during the year 1938. During 1939, the corporation is still in continuance under its charter, enjoying "the corporate franchise to be", is yet using "its privilege to exist." State v. Surety Corp. of America, 19 Del. Ch. 17, 162 A. 852. The franchise tax for 1939 accrued January 1, 1939, and became delinquent on October 2. We rule it to be due and owing in principal, interest, penalties and attorneys' fees. See Stagg v. Geo. E. Nissen Co., 208 N.C. 285, 180 S.E. 658 (Carolina statute same as Louisiana's); Standard Embossing Plate Mfg. Co. v. American Salpa Corp., 113 N.J.Eq. 468, 167 A. 755; New York v. Jersawit, 263 U. S. 493, 44 S.Ct. 167, 68 L.Ed. 405.

There is the further special plea of prescription filed to the corporation franchise taxes of 1933, 1934 and 1935, under Article 19, Section 19, of the Constitution of 1921, State of Louisiana, as amended by Act No. 35 of 1938, p. 1095.

The pertinent part of the Constitution, as it reads since December 8, 1938, is:

" * * * and provided, further, that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due."

■ Previous to this amendment, there was no prescription as to corporation franchise taxes. State of Louisiana v. Stewart Brothers Cotton Co., Inc., 193 La. 16, 190 So. 317.

■ Such a provision is not retroactive. Constitutional Law, 12 C.J. pp. 721, 722; City of Shreveport v. Cole, 129 U.S. 36, 9 S.Ct. 210, 32 L.Ed. 589.

Wade, in "Retroactive Laws," declares:

"This principle is not only applicable to legislative acts, but to State Constitutions, and, in fine, to all written law. Being a rule of construction, it may be applied to every conceivable expression of the will of the law making power where there is a doubt, whether it was intended to take effect prospectively or retrospectively. An illustration as to its application to State Constitutions is, when they contain provisions prohibiting the Legislature from authorizing counties, or other subordinate branches of the State government, to assume certain liabilities. Such provisions cannot affect the validity of special statutes, already in existence, authorizing the assumption of such liabilities, but will be construed as prospective."·

See Sedgwick, "Construction of Statutory and Constitutional Laws", p. 19; also, Cooley on Taxation, p. 221.

In Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867, we find:

"A Constitution should operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect."

The plea of prescription filed by Harold S. Mayer against (a) merchants on open accounts, (b) persons who have lent money, (c) customers on open accounts, (d) overseers, clerks, employees, secretaries and officers for salaries, is overruled and denied; also, his additional and separately filed plea of prescription against persons holding promissory notes is overruled and denied; and, also, his additional and separate plea of prescription and peremption against taxes is overruled and denied.

II. Where an adjudicatee, at a receivership sale, collects revenues from the adjudicated property accruing between the date of adjudication and the date of the execution and delivery of the receiver's deed and payment of the purchase price, is the receivership estate entitled to recover from the adjudicatee the revenues so collected?

■ The law of Louisiana is that no title passes to the purchaser at a public sale until he has paid the price. Roussell v. Hughes, 159 La. 864, 106 So. 332; Capital Building & Loan Ass'n v. Northern Insurance Co., 166 La. 179, 116 So. 843; Frierson v. New York Life Insurance Co., 174 La. 1037, 142 So. 256; Lapene v. Badeaux, 36 La.Ann. 194.

■ Therefore, there will be judgment against the said Robert E. Lee Mayer in favor of the Receiver for $443.32, with judicial interest thereon from November 2, 1938, the date of the receiver's deed and on which the balance of the purchase price, $87,000, was paid.

III. Where a pledgee of mortgage notes, without the authorization or ratification of the pledgor, subordinates such notes to receiver's certificates and other receivership charges, resulting in impairment or total loss of the value of such mortgage notes, is the pledgor entitled to offset the loss thus occasioned against the claim of the pledgee on the promissory notes?

It is admitted that the said written subordinations were executed and delivered without the knowledge or consent of Picard & Geismar, Ltd., the owner of the mortgage notes, and that said Corporation never at any time ratified the actions of the banks.

Under Louisiana Act No. 7 of 1926, amending Section 5 of Act No. 159 of 1898, it is specifically provided that mortgages on lands and improvements outstanding, due and owing at the time receiver's certificates are issued, shall remain unimpaired and retain their priority. International Harvester Co. v. Union Irr. Co., 150 La. 405, 420, 90 So. 741. It is clear, therefore, that had not the banks, the holders of the mortgage notes as pledgees, subordinated the lien of the mortgage securing the said notes to the receiver's certificates, the priority of the mortgage notes would have been maintained. By so doing, the pledgors, as subsequent events proved, wholly destroyed the value of the mortgage notes.

■ It has been frequently held that the mere inaction of a pledgee in failing to enforce payment of collateral notes makes the pledgee responsible for damages occasioned thereby to the pledgor. Meyer Bros. v. Colvin, 122 La. 153, 47 So. 447. In the instant case the pledgee was guilty not merely of negligence, or sins of omis-

sion, but, by his own affirmative act, without the consent of the pledgor, destroyed the value of the collateral by expressly subordinating to the receiver's certificates the mortgage lien securing the collateral.

■ The assignee of the bank's claim filed a plea of estoppel to the right of the receiver to recover for the loss thus caused. Insofar as this plea alleges the knowledge, actions and omissions of Canal Bank & Trust Co., the assignor of the pleader, it is obviously to be disregarded. The allegations of the plea, in regard to Picard & Geismar, Ltd. and its receiver, even if proved or admitted, are not sufficient to constitute an estoppel.

■ The knowledge of A. I. Picard, receiver of Clover Ridge Company, of the subordinations obtained in his capacity of receiver cannot be imputed to Picard & Geismar, Ltd., because he was an officer and director of that corporation. Blum v. Allen, 145 La. 71, 81, 81 So. 760; Leurey v. Bank of Baton Rouge, 131 La. 30, 39, 58 So. 1022, Ann.Cas.1913E, 1168; Seixas v. Citizens' Bank, 38 La.Ann. 424; Thompson on Corporations, 3d Ed., Sections 1769, 1775. Indeed, as a receiver, desiring to negotiate his certificates, his interest was, as a matter of law, antagonistic to those of Picard & Geismar, Ltd., as owner of the mortgage notes. Accordingly, the claim of Canal Bank & Trust Company, In Liquidation, Harold S. Mayer, assignee, is denied.

Judgment will be signed, upon presentation, in conformity with this whole opinion.