**59 So.2d 115**

### In re CANAL BANK & TRUST CO.
### No. 40236.

March 24, 1952.

Rehearing Denied April 28, 1952.

Jas. G. Schillin, Fishman, Reuter, Rosenson & D'Aquin and Warren M. Simon, all of New Orleans, Montgomery, Barnett, Brown & Sessions and Wood Brown, all

of New Orleans, for defendants in intervention and appellants.

Walter Lemann, Donaldsonville, Ellis, Ellis & Lancaster and Archie M. Suthon, all of New Orleans, for intervenor and appellee.

PONDER, Justice.

This is an appeal from a judgment annulling a contract and ordering the return of the purchase price.

Walter Lemann, as agent of Harold S. Mayer, his undisclosed principal, entered into four simultaneous agreements with the Canal Bank & Trust Company in Liquidation, through the State Banking Commissioner, the special agent and the liquidator in charge of its liquidation, on May 19, 1938 for the purchase of notes of Picard & Geismar, Ltd., having a face value of approximately $40,000 for the sum of $6,228.12. These simultaneous agreements were treated by the parties at interest as one contract. They were also treated by the lower court as one contract and are not treated otherwise by counsel on this appeal. Under the contract, the notes were sold to Lemann "without any warranty whatever, not even for the return of any part of the purchase price, except as to the genuineness of the signatures and endorsements and the genuineness of the signatures on the guarantees." It is stated in the contract that there had been partial payments made on the notes which were not endorsed thereon and the purchaser was familiar with these payments and bought only the portion which remained unpaid. It is stated therein that Lemann would return the notes and re-transfer them together with all endorsements, guarantees, etc., after the termination of the receivership and after he receives from the receivership everything that will be payable out of the receivership on the notes, to the Canal Bank & Trust Company in Liquidation for the sum of $434.52. It is provided therein that the object of the sale, assignment, transfer, and the delivery of the notes, endorsements, and continuing guarantees by the bank in liquidation to Lemann, and this agreement of sale and re-purchase, is that Lemann, regardless of the amount, is to receive for his own account any and all sums that may be payable on the notes from the receivership of Picard & Geismar, Ltd., after which the notes, endorsements and continuing guarantees are to be re-transferred to the bank in liquidation. It is provided that the transfer of the notes would not subordinate or effect the right of the bank in liquidation from proceeding against Geismar & Heymann, Inc., guarantors of the notes. It is further agreed therein that as a part of the consideration of the sale that Lemann would transfer to the bank in liquidation 36.21% of any mineral interest or mineral royalties which he might acquire in lands now belonging to Picard & Geismar, Ltd., or which might be acquired by reason of the acquisition of the notes of Picard & Geismar, Ltd., or from any other source.

Thereafter, during the month of June 1938 the lands of Picard & Geismar, Ltd., containing approximately 6,300 acres, were sold at receivership sale and acquired by Harold S. Mayer, through an undisclosed agent, Robert E. Lee Mayer, for the sum of $108,-000. Sometime prior to January 1939, Lemann contacted the attorneys for the receiver and informed them that he was of the opinion that the claims of all the creditors, some 300, with the exception of two claims held by him and one claim held by another, had prescribed. The attorneys informed Lemann that if he insisted on his position they would contest his right to claim on the notes against the receivership because some of the security attached to the notes had been subordinated some years ago without the consent of Picard & Geismar, Ltd., which in their opinion rendered the notes of Picard & Geismar, Ltd., valueless. One of the attorneys for the receivership told Lemann that if he would not insist that the notes of the other creditors had prescribed the receivership would forget about its defense, that they had been rendered valueless because of an unauthorized subordination. Lemann refused this offer and asserted his plea of prescription against the other creditors and counsel for the receiver asserted their claim that the notes of Picard & Geismar, Ltd., were valueless because of the unauthorized subordination. These issues were decided adversely to Lemann and the notes were held to be valueless against the receivership because of the unauthorized subordination. See International Shoe Company v. Picard & Geismar, Ltd., D.C., 30 F.Supp. 570, which was upheld on appeal by the United States Circuit Court of Appeals for the Fifth Circuit in Mayer v. Gros, 116 F.2d 733. Some years thereafter, Harold S. Mayer instituted the present intervention in the liquidation proceedings of the Canal Bank & Trust Company seeking to have the agreements of Lemann, executed on his behalf for the purchase of the notes, decreed null and void and to recover the purchase price paid for the notes. The liquidators of the Canal Bank & Trust Company reconvened and asked that the validity of the contract be recognized; that the bank in liquidation be decreed the owner of 36.21% of an undivided one-fourth interest in all the minerals and mineral rights in or under the 6,-300 acres of land purchased at the receivership sale for Mayer, described in exhibit "A", and directing and requiring the intervenor to execute the necessary instruments to complete the transfer; and that the intervenor be directed to return the notes to the bank in liquidation upon payment of the sum of $434.52 in conformity with the contract.

The lower court, on trial of the case, gave judgment in favor of the plaintiff decreeing the contract null and void and judgment against the defendant for the purchase price of the notes. The liquidators of the bank have appealed.

The appellants contend that the contract involved herein is a sale without warranty

or recourse, not even the return of the consideration. The appellants take the position that the thing sold was a litigious claim or a right to make a claim against the receivership.

From the evidence it appears that the firm of Picard & Geismar, Ltd., had been in receivership in the Federal Court for the Eastern District of Louisiana for some years prior to 1937. Sometime in the latter part of 1937 or the early part of 1938, Lemann began negotiations with the view of purchasing the Picard & Geismar, Ltd., notes involved herein. He interested his brother-in-law, Harold S. Mayer, the intervenor herein, in the proposition and throughout the remainder of the transactions in respect thereto he acted as the undisclosed agent of Mayer, who furnished the money to consummate the transaction. His negotiations finally culminated into the purchase of the notes and the execution of the four instruments constituting the contract.

The notes involved in this suit were previously owned by the Marine Bank & Trust Company, whose president agreed to subordinate certain mortgage notes given as security to receivership certificates. The mortgage notes given as security were on the Clover Ridge Planting & Manufacturing Company, Inc., which was at that time in receivership. Subsequent to and after the Marine Bank & Trust Company was merged with the Canal Bank & Trust Company, the mortgage notes were further sub-ordinated to receivership certificates during the year 1928. In the year 1930 a controversy arose in the receivership proceedings of the Clover Ridge Planting & Manufacturing Company, Inc., between the Canal Bank & Trust Company, which was not in liquidation at that time, and the holders of receivership certificates regarding the mortgage notes and the certificates. The controversy was finally terminated by this court on appeal in 1933. In re Clover Ridge Planting & Mfg. Co., 178 La. 302, 151 So. 212. It appears that Lemann was a counsel of record in the case and his name appears on the brief filed in this court wherein the subordination of the mortgage notes are discussed. The opinion handed down by this court refers to the subordination of the mortgage notes. At the time Lemann purchased the notes he was in a position to know of the subordination for the reason that the subordination was referred to in the suit, both in the brief and the opinion of the court. His testimony indicates that if he did have this knowledge, prior to the purchase of the notes, that he had forgotten it. But be that as it may, the value of the Picard & Geismar, Ltd., notes must have been questionable at the time of the sale because they were sold for such a small price and without warranty, even the return of any part of the purchase price. We gather from the evidence that the underlying motive in the purchase of the notes was Lemann's idea that the rights of the other creditors had prescribed because they had

taken no action to interrupt prescription and that he and another creditor were the only ones who could recover in the receivership proceedings. In other words, he was taking the risk of recovery based on his idea that the claims of the other creditors had prescribed. It does not appear, and the lower court so held, that the liquidators of the bank were cognizant of the subordination of the mortgage notes given in security, which took place some years ago. Even after the attorneys for the receivership proposed that they would not urge their contention that the notes had been rendered valueless because of the subordination if Lemann would withdraw his pleas of prescription, Lemann refused and still pressed the pleas until they were decided adversely to him. This, in our opinion, connected with the other facts in the case shows that when Lemann purchased the notes he thought he could recover under them on the theory that the claims of other creditors had prescribed. He evidently maintained the same opinion when he was later informed of the subordination of the security and evidently did not believe that the subordination of the security would effect his rights to recover under his theory because he continued to assert the pleas of prescription until they were finally decided adversely to him.

▇ There is no fraud shown on the part of the liquidators or that they had knowledge that the security had previously been subordinated. It would not be just to permit the intervenor to recover the purchase price of the notes after he had failed to recover a greater amount, under the facts in this case. Had he been successful in his theory, he would have recovered an amount far in excess of the purchase price paid for the notes. As we see it, the parties to the agreement undoubtedly realized that the amount to be recovered under the notes was highly speculative because the notes would not have been sold for such a small price. The intervenor purchased the notes without warranty and it was specifically agreed that the purchase price would not be returned. Such an agreement is not against public policy and the parties having so contracted are bound by their agreement. Guardian Homestead Association v. Mazerat, 182 La. 710, 162 So. 574 and the authorities cited thereunder.

▇ The appellee contends that the notes were valueless at the time of the sale and that therefore the bank in liquidation had transmitted nothing and that he is entitled to the return of the purchase price. As pointed out heretofore, the notes were purchased with the idea that the defendant could defeat the claims of the other creditors and thereby recover an amount far in excess of that paid for them. The intervenor failed in this undertaking, which he persisted in even after he was informed of the subordination of the security. He merely bought a hope which he was willing to gamble on and he cannot now, after having

failed in his undertaking, recover the purchase price, Article 2451, R.C.C.

■ The appellee contends that he is entitled to recover the purchase price under the provisions of Articles 2504 and 2505, R.C.C.

Article 2504, R.C.C., reads:

"Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act; and any contrary agreement is void."

Article 2505, R.C.C., reads:

"Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk."

These articles of the Civil Code are not applicable for the reason that it is stipulated in the contract that the notes were sold without warranty, "not even for the return of any part of the purchase price." Under the provisions of Article 2503, R.C.C., the parties may agree to the effect of warranty or that the seller shall not be subject to any warranty.

The appellants have cited cases, where the articles of the Civil Code relied on were applied, wherein there was a stipulation of no warranty and the evicted buyer was held to be entitled to restitution of the price

when the buyer was not aware at the time of the sale of the danger of eviction. No case has been cited wherein these articles have been applied where it is stipulated in the contract that no part of the purchase price is to be returned. It appears to us that the intervenor purchased the notes at his peril and that he was aware at the time of the speculative nature of a claim under them. The parties to the agreement evidently thought so because the notes were sold for such a small price and it was stipulated that they were transferred without any warranty, not even for the return of any part of the purchase price. This in itself shows that the parties realized that recovery on these notes was speculative.

■ The contract is a valid one and contains nothing against public policy. The appellant is entitled to enforce its provisions relating to the transfer of the mineral interest and the return of the notes upon payment of the amount set forth in the contract.

For the reasons assigned, the judgment of the lower court is reversed and set aside. It is ordered, adjudged and decreed that the Canal Bank & Trust Company in Liquidation is the owner of 36.21% of an undivided one-fourth interest in all minerals and mineral rights in and under the 6,300 acres of land acquired by Robert E. Lee Mayer for Harold S. Mayer at receivership sale under order of the District Court of the United States for the Eastern District of Louisi-

ana on November 2, 1938, as fully described in exhibit "A" in this record; and Harold S. Mayer is directed to execute such transfers and other instruments as may be necessary to transfer the aforementioned mineral interest and mineral rights. It is further ordered and decreed that Harold S. Mayer is directed to return the Picard & Geismar, Ltd., notes calling for the sum of approximately $40,000, involved herein, to the Canal Bank & Trust Company in Liquidation upon the payment by the liquidators of the bank to Harold S. Mayer the sum of $434.52. All costs to be paid by the intervenor, appellee.

On Application for Rehearing

PER CURIAM.

There is merit in one of the contentions made in the application for rehearing. That is the one raised under Point (3) concerning that part of the decree herein handed down directing specific performance by the intervenor, Harold S. Mayer, and ordering him to execute transfers to the Canal Bank & Trust Company in Liquidation of 36.21% of an undivided one-fourth interest in all minerals and mineral rights in and under the 6,300 acres of land acquired by him, through his agent, at receivership sale in the matter of International Shoe Co., Complainant v. Picard & Geismar, Ltd., Respondent, in the U. S. District Court for the Eastern District of Louisiana, 30 F. Supp. 570.

It is represented in brief in support of the application for rehearing, and it is borne out by the record, that in his acquisition of these lands there was no obligation imposed on Mayer not to sell any part thereof nor was he, in any manner, prevented from exercising his rights of ownership relating to them. In the absence of any restrictions he sold some 4,500 acres in which he may have reserved enough of the mineral interests to comply with the obligation of the transfer to the Canal Bank in Liquidation. However, some of these reservations of mineral interest appear to have been made more than ten years ago and their present status is uncertain in view of the prescription which applies to mineral servitudes. It is doubtful therefore whether he can comply with his obligation to the bank and specifically perform under his contract.

Under the circumstances it is urged that the case be remanded to the lower court for the purpose of ascertaining the correct status of the mineral interests he still owns and to find out just how far he can comply with the order of specific performance.

Mr. Mayer impresses us as having been very fair and frank in his testimony and voluntarily expressed his willingness in court to make the transfer if called upon, of whatever mineral interests he owned.

Now that he has been held obligated under the contract, in view of his willingness to make the transfer of such interests as

he has left, we do not see the necessity of a remand, as such purpose, as far as it can be accomplished at this time, can be achieved by amending our decree ordering him to make the transfer of so much of the mineral rights as he can at this time and reserving to the bank its right to pursue whatever action it may deem proper and want to take against him for that part of the minerals he has become unable to transfer and deliver.

We have carefully considered the other points urged in the application for rehearing and find no merit in them.

For the reasons stated at is ordered that our former decree herein be amended by directing the intervenor, Harold S. Mayer, to transfer to the Canal Bank & Trust Company in Liquidation 36.21% of an undivided one-fourth interest in all the minerals and mineral rights he has left and can transfer at present in the 6,300 acres acquired by him at receivership sale in the matter of International Shoe Company v. Picard & Geismar, Ltd., United States District Court for the Eastern District of Louisiana, 30 F.Supp. 570, and reserving to the said Canal Bank & Trust Company in Liquidation the right to pursue whatever action it may deem proper against him for the remainder of such minerals as he does not or cannot in the future transfer and deliver.

With this amendment in the decree the rehearing applied for is refused.